**Ex parte Randy Eli GROTHE.**

**No. 69275.**

Court of Criminal Appeals of Texas, en banc.

July 3, 1984.

Rehearing Denied April 24, 1985.

John H. McElhaney, Roark Reed, Dallas, for applicant; George R. Milner, Ronald L. Goranson, Dallas, of counsel.

Lawrence B. Mitchell, R.K. Weaver and Kerry Fitzgerald and Henry Wade, Dist. Atty. and Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for Judge Moss.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an original application for writ of habeas corpus wherein applicant requests that this Court issue a writ of habeas corpus and relieve him from an order of con-tempt entered by respondent judge during the pendency of a criminal trial. See Art. V, Sec. 5, Tex.Const. and *Ex Parte Sheppard*, 548 S.W.2d 414 (Tex.Cr.App.1977). This application presents a very narrow question, to wit: whether the First Amendment to the United States Constitution or Art. I, Sec. 8 of the Texas Constitution create a privilege whereby photo journalists are excused from testifying and from producing photographs of alleged criminal activity witnessed in a public place. To this narrow question we answer in the negative and deny relief.

Applicant is and was at all relevant times employed as a photographer for the Dallas Morning News. On the morning of September 23, 1983, applicant was assigned to cover a protest demonstration occurring outside the offices of Dallas Power and Light on Commerce Street in downtown Dallas. Applicant proceeded to the above location and took photographs of the demonstration and the subsequent arrest and removal of certain demonstrators, including Mavis Belisle. The following day the Dallas Morning News ran a photograph taken by applicant of Belisle being physically removed from the site by arresting officers.

Subsequently Belisle and two co-defendants were charged by information with violation of V.T.C.A. Penal Code Sec. 42.-03(a)(1), obstructing a public passageway. In so charging Belisle, the State specifically pled that the obstruction of the passageway was accomplished "by chaining himself to the said doorway of a public building."

At trial on the merits Belisle admitted participation in the demonstration but specifically denied she had at any time been chained to the building. The State called the arresting officer and a security guard for Dallas Power and Light, both of whom testified to having personally observed Belisle chained to the doorway. The defense called Belisle and one of the demonstrators (who was allegedly closest to Ms. Belisle), both of whom testified that Belisle was never at any time chained to the doorway.

Thus the central issue at trial was whether the defendant was chained to the doorway.

Belisle sought to subpoena applicant to present testimony as to his personal observations of the demonstration and Belisle's activities.

Applicant filed a motion to quash the subpoena alleging, inter alia, that the First Amendment created a privilege for newspaper reporters and that defendant Belisle had failed to make a substantial showing as to what applicant claimed was required by *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). After an extensive hearing the respondent held that applicant would be required to testify as to his personal observations. Prior to testifying, applicant, by his attorney, acknowledged that, as to his personal observations of alleged criminal activity, he was on the same footing as a layperson and therefore he would testify. He nonetheless sought to limit his testimony just to personal observation and continued to invoke a privilege not to answer any questions which encroached upon his status as a reporter. Applicant testified as to his observations. He testified that he *believed*[1] that defendant Belisle was chained to the doorway; however, he admitted that he had, on a prior occasion, told his attorney that he did not remember whether defendant Belisle was chained. Significantly, he further testified that the photographs he took would probably show whether the defendant was in fact chained and would refresh his recollection. Subsequently, the defense requested that applicant be ordered to review his photographs. Respondent, after further argument by all parties, ordered applicant to review his photos and have the photos available for cross-examination. To this order applicant refused to comply and accordingly was held in contempt by respondent, and ordered jailed until he purged himself. This writ immediately followed.[2]

Applicant argues that the U.S. Constitution requires that courts recognize a qualified privilege for the press not to be required to testify. Applicant urges that by reading Justice Stewart's dissent with Justice Powell's concurrence in *Branzburg*, supra, a balancing test is required before a reporter will be ordered to divulge sources to courts or grand juries. We decline to adopt any combination of the dissenting and concurring opinions. The four justice plurality opinion in which Justice Powell concurred quite clearly found that no balancing was required. *Branzburg*, supra, at pp. 705–06, 92 S.Ct. at 2668–69. In a footnote in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), Justice Powell clarified his position in *Branzburg*, observing that any press interests can be weighed in the regular subpoena process. Justice Powell specifically found no exception to the requirements of a subpoena for media personnel based upon the First Amendment. *Zurcher*, supra., concurring opinion, footnote 3 at 570, 98 S.Ct. footnote 3 at 1984.

Assuming arguendo, that the dissent in *Branzburg* did in fact recognize some sort of media privilege based upon the First Amendment, it is abundantly clear that the facts in *Branzburg* are much closer constitutionally than the limited facts in the case sub judice.

*Branzburg* involved three differing claims of privilege, basically centering on appearing before a grand jury and disclosing confidential sources. One of the reporters in *Branzburg* had, by virtue of a confidential informer relationship, witnessed and photographed the making of hashish. He was required to come forward and divulge "secret" information. We fail to discern any greater interest for applicant here, who allegedly witnessed a crime in a public place. If in fact any weighing of interests is required for requiring the press to divulge confidential informants,

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**2.** It is this Court's understanding that applicant was immediately released on bail and did not pursuant to this contempt order, actually spend any time jailed.

that issue is not presented today and we do not decide it.

In *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) the Supreme Court held that nothing in the First Amendment exempted the press from being subject to a search for proof of criminal activity. We find the facts in *Zurcher* very similar to the instant case. *Zurcher*, supra, involved the search of a student newspaper office for photographs of a student demonstration wherein several police officers were injured. The State desired to identify possible defendants for criminal charges through the photographs. The Supreme Court upheld the search and stated:

> "We finally note that if the evidence sought by warrant is sufficiently connected to the crime to satisfy the probable cause requirement, it will very likely be sufficiently relevant to justify a subpoena and to withstand a motion to quash." [3] *Zurcher*, supra at 566, 98 S.Ct. at 1982.

Thus implicitly, the Supreme Court has recognized that the press is not immune from subpoena. Although we find *Zurcher* factually less compelling than the case sub judice, we nevertheless believe that it is persuasive in its analysis of First Amendment privileges.

We are not unmindful of the important place of a free press in our society, see *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Grosjean v. American Press*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Houston Chronicle Pub. Co. v. Shaver*, 630 S.W.2d 927 (Tex. Cr.App.1982). Not to be forgotten, however, is the interest in protecting the integrity of the criminal justice system. See *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

In *Nixon*, supra, the Supreme Court was weighing the asserted right of presidential privilege versus the criminal justice system's need for relevant, material evidence. While the Court did recognize a constitutionally based presidential privilege, that privilege had to give way to the criminal defendant's rights and the integrity of the criminal justice system. The need to develop all facts in an adversarial system of criminal justice is fundamental and comprehensive. *Nixon*, supra.

Additionally, a citizen accused of crime has the right to confront and fully cross-examine all persons who have testimony relevant to criminal charges. See *Davis v. Alaska*, 415 U.S. 308, 311, 94 S.Ct. 1105, 1107, 39 L.Ed.2d 347 (1974); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). As the Supreme Court noted in *United States v. Nixon*, supra:

> "The right to production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor... It is the manifest duty of the courts to vindicate those guarantees and to accomplish that, it is essential that all relevant and admissible evidence be produced." *United States v. Nixon*, 418 U.S. at p. 711, 94 S.Ct. at p. 3109.

Applicant cites us to many authorities from other jurisdictions, urging that a balancing test be adopted and applied to the instant case. We note that most of the cases cited deal with disclosure in civil actions or disclosure of confidential sources; as such we find them to be unpersuasive and not controlling. Moreover, we fail to see a hypothetical case wherein a weighing process would result in suppression of highly relevant personal observation of public criminal activity.

**3.** We recognize that the Texas Legislature has adopted a search shield law which provides more protection than the Zurcher court did. Art. 18.01(e), V.A.C.C.P. However, to this date the Legislature had *not* adopted a newspaper testimonial privilege, a reporter's sources shield statute or excluded newspapers from subpoenas.

■ In light of the foregoing, we fail to see how applicant's rights will be in any way diminished in requiring production of photographs of an alleged criminal offense occurring in a public place.

The application for writ of habeas corpus is denied. It is so ordered.

TEAGUE and CLINTON, JJ., concur in this opinion.

W.C. DAVIS and TOM G. DAVIS, JJ., and ONION, P.J., not participating.

## OPINION CONCURRING IN DENIAL OF LEAVE TO FILE APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

Applicant complains the Court on original submission misread *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) [hereafter *Branzburg*] in refusing to recognize the constitutional necessity for a balancing of First and Sixth Amendment interests in cases such as this; he argues that this refusal, in turn, results in adoption of an "absolutist position" which denies the existence of *any* First Amendment privilege of journalists to decline to reveal unpublished material.

I agree that our opinion on original submission may have been hasty in concluding that the *Branzburg* plurality "quite clearly found that no balancing was required;" however, the balancing test advocated by applicant today is virtually identical to that advanced by Justice Stewart in dissent in *Branzburg*, a position which *was* quite clearly rejected by five members of the Supreme Court.

As I read *Branzburg*, the "balancing" endorsed by the plurality and Justice Powell is more in the nature of weighing considerations relevant to a motion to quash a subpoena within the context of First vis-a-vis Sixth Amendment concerns: whether a grand jury investigation is instituted or conducted in good faith; whether subpoenas are issued, not for legitimate purposes of law enforcement, but to instead harass the press or disrupt a reporter's relationship with news sources; consideration of the propriety, purposes, scope of the judicial proceeding and the pertinence of the evidence sought; etc.

But applicant would read *Branzburg* to require this criminally accused, before seeking to exercise a Sixth Amendment right to compulsory process in order to prepare a defense to the accusation, to show (1) she has "exhausted alternative sources" for what is revealed in applicant's subpoenaed photographs; (2) she has "a compelling need for" them; and, (3) that the photos are "highly relevant to the defense."

I simply do not read into *Branzburg* any such test, much less any allotment of that burden on a party to a criminal prosecution. On the contrary, the concurring opinion observed that such a rule would,

"as a practical matter, defeat ... a fair balancing and the essential societal interest in the detection and prosecution of crime would be heavily subordinated."

408 U.S. at 710, 92 S.Ct. at 2671.

Moreover, in *Branzburg*, the Court's majority specifically refused to accord any privilege whatever to journalists to choose not to even *appear* when summoned by lawful subpoena.[1] Further, a majority of the Court was not persuaded that the litigants claiming a right to protect confidential sources had demonstrated any intolerable burden on news gathering or other clear First Amendment rights.[2] And the plurality discussed at some length the well

---

1. As I understand the dissenting positions in *Branzburg*, the "balancing" criteria advocated by our applicant here would place the three burdens discussed *ante* on the State or accused before the journalist in question would be required to even *appear* pursuant to a subpoena.

2. The Court observed that the facts of the cases did not implicate recognized First Amendment

concerns such as intrusions upon speech or assembly, prior restraint or restriction on publication; express or implied command that the press publish what it prefers to withhold; exaction or tax for publishing privilege; penalty, civil or criminal, related to the content of published material; restriction on use of confidential sources; any requirement that the press

recognized limitations on the press demonstrating that the First Amendment is not absolute in its operation.[3]

While many of the issues advanced in applicant's motion for rehearing are provocative, important and deserving of serious consideration by this Court in a proper context, I do not perceive that they are presented by the facts of the instant case. As I understand those facts, the applicant was assigned by *The Dallas Morning News* to photograph a protest demonstration outside the Dallas Power and Light offices in downtown Dallas. Applicant took photographs of the demonstration as well as the arrest and removal of certain demonstrators, including Mavis Belisle. Belisle was subsequently charged with a penal offense, obstructing a public passageway, and sought applicant's testimony, and later, his photographs, for her trial. Applicant's refusal to make his photos available to Belisle for purposes of crossexamination forms the basis of this contempt proceeding.

In declining to recognize a newsman's unqualified right to refuse to reveal confidential sources under the three fact situations presented in *Branzburg*, the plurality stated:

> "On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but *uncertain*, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial."

408 U.S. at 690–691, 92 S.Ct. at 2661–2662.

From this record one cannot perceive any certain burden on news gathering that

might result from requiring the applicant here to turn over photographs which may exonerate a person criminally accused, and which applicant took in a public place apparently accessible to the public at large. Neither do I read applicant's motion for rehearing to argue that his evidence established any such realistic burden.

If the Court's opinion on original submission is limited, as it clearly states it is, to the "narrow question" presented by the facts, damage to the First Amendment cannot be seriously read into it. It is therefore appropriate to reiterate here the concluding paragraph of Justice Powell's concurring opinion in *Branzburg*:

> "In short, the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection."

408 U.S. at 710, 92 S.Ct. at 2671.

Such legitimate interests are simply not presented today.

Therefore I concur in the Court's denial of leave to file.

---

publish its sources of information or indiscriminately disclose them on request.

**3.** The plurality mentioned, for example, that the press may not circulate knowing or reckless falsehoods damaging to private reputation; the First Amendment does not guarantee the press a constitutional right of special access to information not available to the general public; the press is regularly excluded from grand jury proceedings, court conferences, meetings of official bodies and private organizations; newsmen have no constitutional right to access to the scenes of crime or disaster when the public is excluded and may be prohibited from attending or publishing information about criminal trials in order to assure the fairness of the proceeding.