The STATE of Texas, ex rel., John F. HEALEY, Jr., District Attorney, Relator,

v.

Honorable Walter S. McMEANS, Judge, County Court at Law No. 2, Respondent.

No. 71715.

Court of Criminal Appeals of Texas, En Banc.

April 13, 1994.

Judge Baird Filed Opinion Concurring in Denial of Rehearing Oct. 5, 1994.

John F. Healey, Jr., and J. Sidney Crowley, Asst. Dist. Atty., Richmond, for relator.

Charles L. Babcock, N. David Bleisch, Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON RELATOR'S APPLICATION FOR WRIT OF MANDAMUS

CAMPBELL, Judge.

Relator John F. Healey, Jr., District Attorney of Fort Bend County, seeks a writ of mandamus from this Court directing respondent Walter S. McMeans, Judge of County Court at Law Number Two of Fort Bend County, to vacate his orders granting motions to quash four subpoenas. The subpoenas in question commanded four newsmen to appear and give evidence in a pending criminal prosecution. We will conditionally grant the writ.

### The Relevant Facts

Sometime in late 1992 or early 1993, relator presented an information in respondent's court charging Newell Willard Evans, a funeral home operator, with abuse of a corpse. See Tex.Penal Code § 42.10. On June 17, 1993, relator subpoenaed four local television newsmen, commanding them to give testimony and produce any videotapes they had concerning the alleged offense.[1] The news-

---

1. More specifically, the subpoenas commanded the newsmen to testify and to produce "any

men promptly filed motions to quash on the ground that they had a qualified privilege, under the First Amendment to the United States Constitution[2] and Article I, § 8, of the Texas Constitution,[3] not to testify or produce other evidence at any criminal trial. *See* 1 J. Strong (ed.), *McCormick on Evidence* § 76.2 (4th ed. 1992) (discussing alleged "newsman's privilege").

On June 29, 1993, respondent held a hearing on the newsmen's motions to quash. A Fort Bend County assistant district attorney testified at the hearing that he had been assigned to prosecute Evans and that he had reason to believe that the newsmen had heard and videotaped Evans making incriminating statements regarding the alleged offense. The newsmen argued in response at the hearing that they had a qualified constitutional privilege not to give any evidence unless the State could show that it had a compelling need for the evidence. They argued further that the State had not shown such a need. On July 9, 1993, respondent granted the motions to quash.

On July 16, 1993, relator, relying upon *Ex parte Grothe*, 687 S.W.2d 736 (Tex.Crim.App. 1984), asked this Court for a stay of all proceedings in the trial court and a writ of mandamus ordering respondent to vacate his orders granting the motions to quash. On August 16, 1993, we stayed the proceedings below and ordered this case filed and set for submission.

### The Law of Mandamus

■ This Court is empowered by Article V, § 5, of the Texas Constitution to issue writs of mandamus in all criminal law matters. *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 584 (Tex.Crim.App. 1993). A writ of mandamus is a drastic remedy, however, to be invoked only in extraordinary situations. *Perkins v. Third Court of Appeals*, 738 S.W.2d 276, 284 (Tex.

Crim.App.1987). Accordingly, mandamus relief is available only when the relator can establish two things: first, that no other adequate remedy at law is available; and second, that the act he seeks to compel is ministerial. *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Crim.App.1991). An act is ministerial "when the law clearly spells out the duty to be performed ... with such certainty that nothing is left to the exercise of discretion or judgment." *Texas Dept. of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Crim.App.1981).

■ Of course, mandamus "is not a substitute for and cannot be used to perform the office of an appeal." *Bradley v. Miller*, 458 S.W.2d 673, 675 (Tex.Crim.App.1970). Thus, mandamus may not be used to give the State a right to appeal that was not granted by the Legislature in Article 44.01 of the Texas Code of Criminal Procedure. But the limitations in Article 44.01 on the State's right to appeal are no impediment to the State's use of mandamus to correct judicial action *that is clearly contrary to well-settled law,* whether that law is derived from a statute, rule, or opinion of a court. As two eminent commentators have explained: "In limiting the government's right to appeal, ..., the legislature has made clear that the government cannot complain of ordinary trial errors, but it cannot have intended that the [g]overnment be obliged to submit to arbitrary judges who refuse to behave as judges." W. LaFave & J. Israel, *Criminal Procedure* § 27.4 at 1155–1156 (2nd ed. 1992) (some punctuation omitted). In other words, the Legislature, in enacting Article 44.01, cannot have intended that mandamus be unavailable to correct judicial action that ignores clear, binding precedent from a court of superior jurisdiction. Trial judges do not enjoy the freedom to ignore the law.

### Application

■ Applying these principles to the case *sub judice,* we conclude that relator has es-

coverage shot of the Newell Evans/Larry Bojorski body dumping case which occurred during the week of October 12, 1992."

**2.** The First Amendment's guarantee of the freedom of the press was made applicable to the states by the due process clause of the Fourteenth Amendment. *Near v. Minnesota*, 283 U.S.

697, 707, 51 S.Ct. 625, 267–28, 75 L.Ed. 1357 (1931).

**3.** Article I, § 8, provides in relevant part that "no law shall ever be passed curtailing the liberty of ... the press."

tablished the prerequisites to mandamus relief. First, he has demonstrated that he has no other adequate remedy at law. He cannot appeal respondent's orders under Article 44.01, and if he proceeds to trial without the newsmen's evidence and the jury acquits Evans, he (i.e., relator) will have no appellate avenue available for review of respondent's orders.

 Second, relator has demonstrated that respondent has a ministerial duty to vacate the orders granting the motions to quash. This is so because the recognition of a "newsman's privilege" is clearly contrary to well-settled law. Although Article V of the Texas Rules of Criminal Evidence contains a variety of evidentiary privileges, it does not contain a privilege for newsmen. The privileges that *are* contained in Article V were not lightly created and were carefully designed to protect important interests which clearly outweigh the competing public interest in the search for truth. Furthermore, under our decision in *Ex parte Grothe*, 687 S.W.2d 736, which is binding on all lower criminal courts in Texas, newsmen have no constitutional privilege, qualified or otherwise, to withhold evidence relevant to a pending criminal prosecution.[4] *See Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (rejecting claim of newsman's privilege under the First Amendment); *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 669, 111 S.Ct. 2513, 2518, 115 L.Ed.2d 586 (1991) (reaffirming *Branzburg*); *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 200–01, 110 S.Ct. 577, 588 (1990) (same).

 Even if we were to assume *arguendo* the existence of a newsman's privilege in some contexts, it, like the presidential privilege implicit in the separation of powers doctrine and Article II of the United States Constitution, would have to yield in the face of the fundamental need, on the part of both the prosecution and the defense, to develop all facts in an adversarial system of criminal justice. *See United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). As the Supreme Court explained in *Nixon*,

[t]he ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

\* \* \* \* \* \*

... [T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts.... [T]he constitutional need for production of relevant evidence in a criminal proceeding is specific and central to the fair adjudication of a particular criminal case in the administration of justice. Without access to specific facts a criminal prosecution may be totally frustrated.

*United States v. Nixon*, 418 U.S., at 709, 712–713, 94 S.Ct. at 3108, 3110.

The application of Article V and *Grothe* to the facts of this case requires no act of discretion or judgment on the part of respondent; he need only read Article V and *Grothe* and apply them, just as he might read and apply a statute. In other words, the application of Article V and *Grothe* to the facts of this case is "ministerial" as we have previously defined that term. That being the case, respondent is not free to simply ignore the existing law and thereby thwart compulsory process vital to the commencement and completion of a criminal trial.

### Conclusion

Relator has established the prerequisites for mandamus relief. As is our custom, we will withhold issuance of the writ and accord respondent an opportunity to conform his actions to this opinion. Only if such action is not taken will the writ of mandamus issue.

---

**4.** We note also that the Legislature has not enacted a statutory newsman's privilege.

MALONEY, J., joins with note: The parties do not address the ramifications of article 18.01(e) of the Code of Criminal Procedure which precludes the issuance of an evidentiary search warrant for articles "located in an office of a newspaper, news magazine, television station, or radio station" except for property or items described in subsections 1–9 of article 18.02. Admittedly an evidentiary search warrant is a much more drastic invasion of privacy than a subpoena; but the Legislature has at least evidenced some intent to maintain the privacy of a news office and its contents in passing article 18.01(e). We might ask if you can't seize it by court order (search warrant), how can you subpoena it by clerk order? However, the implications of article 18.01 are not before us. Accordingly I join the opinion of the Court.

MEYERS, Judge, dissenting.

The Court here says, as it has so often in the past, that the writ of mandamus is available exclusively to compel the performance of a ministerial duty which cannot be enforced by other available means. This is the traditional and conservative view of mandamus, and it is the one to which I subscribe. But it is not the only view supportable by this Court's recent case law, and it is not the one actually applied by the Court in this case. Indeed, it is apparent to me that the Court has, during its relatively brief period of general mandamus jurisdiction, begun to transform the law of mandamus in ways which fundamentally alter its historic purpose and threaten to damage the orderly procedure of appellate review promulgated by the Legislature. The instant case is yet another example of this disturbing trend.

In my estimation, the best expression of mandamus law to appear from this Court in recent years, at least as regards the "ministerial duty" requirement, is the opinion in *State ex rel. Curry v. Gray*, 726 S.W.2d 125 (Tex.Crim.App.1987) (opinion on rehearing). In that case, the Criminal District Attorney of Tarrant County asked this Court to order the Judge of Tarrant County Criminal District Court Number Four to withdraw his pretrial order sustaining a plea of former jeopardy in a pending criminal prosecution.

We declined to do so. Elaborating the requirement that mandamus will lie only to compel ministerial duties, we concluded that:

If a trial judge has jurisdiction over a particular issue, he is empowered to decide that issue in any way he has authority to do so; however, he cannot be *required,* by extraordinary writ of mandamus or prohibition, to decide that issue "correctly." This is one reason why extraordinary relief is not available to compel a particular outcome where deciding that outcome involves a discretionary or judicial act. The law confers the authority to decide upon the judge, and the correctness of his or her decision may not be supervised at every step by appellate courts.

The question is not whether respondent made an incorrect decision regarding the motion. The question is did the respondent have the *authority* to rule in any way he believed proper. In the case before us, respondent had the jurisdiction and the complete authority to consider and rule upon the motion presented by Battie regarding collateral estoppel, regardless of the propriety of the actual ruling made.

726 S.W.2d at 128–29 (citations omitted) (emphasis in original).

Barely a month later, however, the Court carved out a dramatic exception to this rule. Jealous of its own supremacy in matters of criminal law, and unable to stomach the possibility that some criminal law matters might be finally resolved in the lower appellate courts, this Court announced that "the traditional two-part test for determining whether mandamus should issue ... is altered [only by] adoption today of the clear abuse of discretion standard in reviewing the mandamus actions of the courts of appeals." *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, 550 (Tex.Crim.App.1987). The Court's entire explanation for adoption of this admittedly new rule in criminal law matters is as follows:

[U]nder this Court's present test for issuance of original mandamus in criminal law matters, we would never be able to review mandamus actions of the courts of appeals because those actions could always be characterized as discretionary in nature.

Such a circumstance, if allowed to continue, would allow the courts of appeals to interpret criminal law in writs of mandamus independent of any review by this Court. This unusual circumstance *requires* that we use our original mandamus jurisdiction in criminal law matters to determine whether issuance of mandamus by a court of appeals constitutes a clear abuse of discretion.

*Id.* at 550 (footnote omitted) (emphasis added). In this way, the Court set a rather clear precedent for openly amending its own constitutional and statutory jurisdiction to correct the mistake made by Texans and their elected representatives when they opted to provide that certain decisions of the lower appellate courts not be subject to further judicial review.

Since *Dickens* the Court has continued to insist that the "clear abuse of discretion" exception only applies under limited conditions to supervision of the lower appellate courts. *Ater v. Eighth Court of Appeals,* 802 S.W.2d 241, 243 (Tex.Crim.App.1991). Yet in spite of these assurances and its unambiguous adherence to the traditional rule in *Gray,* the Court has nevertheless declined to follow its own precepts in practice. Take, for example, *Stearnes v. Clinton,* 780 S.W.2d 216 (Tex.Crim.App.1989), decided only two years later, holding that mandamus will lie to force withdrawal of a trial judge's order removing appointed counsel. The Court speaks at great length about the rights of indigent defendants to be represented by vigorous advocates and about the lack of judicial authority arbitrarily to remove a defense attorney. But it openly acknowledges that trial judges do have authority to remove appointed counsel, albeit they err to do so except under certain narrowly defined circumstances. Nevertheless, the Court grants mandamus relief in *Stearnes* upon the patently fictional ground that respondent judge "acted without authority." 780 S.W.2d at 223. This is like saying that no one has authority to do the wrong thing, that everyone has a ministerial duty to do what's right. In a sense, of course, it's true. But it's not what traditional mandamus law means by "ministerial duty," and it is clearly inconsistent with the holding in *Gray.*

Similarly, in *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1 (Tex.Crim.App.1990) (plurality opinion), the Court holds that mandamus will lie to compel vacation of a district court order removing the District Attorney's Office from prosecution of a criminal case. Holding that mandamus is available, not only to compel a ministerial duty, but also "to nullify a void order," 793 S.W.2d at 5, the Court then proceeds to reason that the order disqualifying the District Attorney in that case was void because, among other things, it did not appear that any of the three statutory grounds for removal had been proved. In short, the judge, who undoubtedly had authority to prevent conflicts of interest by attorneys practicing in his court, merely erred so do so in *Edwards,* and was accordingly made to withdraw his order. *Compare State ex rel. Thomas v. Banner,* 724 S.W.2d 81 (Tex.Crim.App.1987) (mandamus will lie to force withdrawal of an order granting shock probation entered before the trial judge acquired jurisdiction to do so); *State ex rel. Holmes v. Salinas,* 784 S.W.2d 421 (Tex.Crim.App.1990) (mandamus will lie to compel withdrawal of void order prohibiting prosecutors from seeking an indictment until after completion of an examining trial); *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47 (Tex.Crim.App.1987) (mandamus will lie to force withdrawal of an order granting a new trial after a motion for new trial has been overruled by operation of law); *State ex rel. Holmes v. Klevenhagen,* 819 S.W.2d 539 (Tex.Crim.App.1991) (mandamus will lie to direct rescission of order granting habeas corpus relief from extradition warrant when habeas judge adjudicated all disputed facts in a manner favorable to the extradition warrant, but refused extradition anyway); *State ex rel. Curry v. Carr,* 847 S.W.2d 561 (Tex.Crim.App.1992) (mandamus will lie ordering trial court to empanel jury when prosecuting authorities refuse to approve jury waiver).

These cases are merely examples of irregular application by the Court. They do not, by any means, exhaust the list of inconsistent holdings. But they have led ultimately to an even more profound difficulty. The vocabulary of mandamus law is itself changing, apparently to accommodate the more relaxed

attitude of the Court toward its extraordinary original jurisdiction. Thus, in *State ex rel. Sutton v. Bage*, 822 S.W.2d 55 (Tex.Crim. App.1992), which holds that mandamus will not lie to compel a court of appeals clerk to file an untimely notice of appeal, the Court identifies the first prerequisite for mandamus relief as requiring relator to show "that under the relevant law and facts, he has a *clear* right to the relief sought, i.e., the act he seeks to compel is ministerial[.]" 822 S.W.2d at 57 (internal quotation marks omitted). The Court apparently accepts, without really addressing the issue, that clerks are not obliged to receive for filing papers which have not been timely tendered. Given the Court's conclusion that the papers were not timely tendered in this case, it is apparent that the clerk had no duty, ministerial or otherwise, to accept them. Thus, the *Bage* Court does not illuminate the "ministerial duty" requirement at all, at least not so as to distinguish it from other legal duties, and is interesting only because, without further elaboration, it equates this prerequisite to the Court's exercise of its mandamus jurisdiction with "a clear legal right to the relief sought," citing *Braxton v. Dunn*, 803 S.W.2d 318 (Tex.Crim.App.1991) and *State ex rel. Wade v. Mays*, 689 S.W.2d 893 (Tex.Crim. App.1985).

But neither *Braxton* nor *Mays* actually supports the equation. *Braxton*, for example, merely observes in passing that "[m]andamus will issue where there is but one proper order to be entered[,]" relying oddly enough on *Gray*. This proposition is very different, however, both as an historical matter and as applied in *Gray*, from the "clear legal right" formulation now gaining currency. Thus, in *Gray*, the Court describes a duty as ministerial if it is "clearly fixed and required by law[,] ... unequivocal, unconditional and present." Likewise, *Mays* only employs the language "clear legal right," citing *Wortham v. Walker*, 133 Tex. 255, 128 S.W.2d 1138 (1939), to demonstrate that legal disputes, as well as factual controversies, are not cognizable by the Court in an application for mandamus relief unless the action sought to be compelled is "manifestly ministerial ... as opposed to judicial or discretionary." 689 S.W.2d at 898 (internal quotation marks

omitted). *Wortham*, in turn, found the phrase in an old legal treatise and made use of it to argue that "[t]he office of mandamus is to execute, not to adjudicate." 128 S.W.2d at 1151.

Thus, until fairly recently, the case law would not support use of the phrase "clear legal right" in place of "ministerial duty" to describe the limits of a court's mandamus jurisdiction. Indeed, the phrase is still commonly used to identify an additional prerequisite to mandamus relief which imposes a standing-like requirement on the relator which is distinct from the requirement that respondent have a ministerial duty. *See, e.g., Collins v. Kegans*, 802 S.W.2d 702, 704 n. 7 (Tex.Crim.App.1991). To the extent that analogous terminology was actually employed in earlier cases, it was plainly not to suggest that a duty should be considered ministerial whenever the relator would clearly have been entitled to prevail on the merits of his claim in an ordinary legal action. Rather, it has traditionally been available only to enforce nonjudicial, nondiscretionary compliance with strictly ministerial duties.

Nevertheless, two years ago in *Buntion v. Harmon*, 827 S.W.2d 945 (Tex.Crim.App. 1992), the Court held that mandamus will lie to force withdrawal of an order appointing new counsel to represent an indigent defendant on appeal. In the process, it purported to complete transformation of the second prerequisite to mandamus relief from a requirement that the respondent have a "ministerial duty" to perform a certain act into a requirement that the relator have a *"clear* right to the relief sought." 827 S.W.2d at 947. In a footnote, the Court explains that a "discretionary function may become ministerial when the facts and circumstances dictate but one rational decision[.]" 827 S.W.2d at 948 n. 2. The Court then proceeds to hold that, while replacement of appointed counsel is ordinarily within discretion of a trial judge, "[t]here must be some principled reason, apparent from the record, to justify the trial judge's sua sponte replacement of appointed counsel[.]" 827 S.W.2d at 949. Because the judge did not give a "principled reason" in *Harmon*, the Court held that relator had a clear right to set aside the removal order.

Thus, *Harmon* not only reaches a result inconsistent with *Gray* in exactly the same way as *Stearnes* and *Edwards* do, but supports its rationale with an altogether new standard for determining the availability of mandamus relief. *See also Curry v. Wilson,* 853 S.W.2d 40, 43 (Tex.Crim.App.1993); *Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581, 586 (Tex.Crim.App.1993). All of this has apparently happened, and continues to happen, without any serious debate of the issue, either in briefs of the parties or among the judges of this Court. Yet, it represents a profound shift of focus which, if pursued further, will ultimately supplant much of the existing appellate process and permit an appeal in cases which, by law, are not appealable.

It is a symptom of these changes that, in recent years, our mandamus jurisprudence has often focussed on the other prerequisite to mandamus relief, that is the inadequacy or unavailability of ordinary legal remedies to vindicate important interests of litigants in criminal cases. Most of this law has been written in context of mandamus applications from prosecuting authorities who may have no review of adverse trial-level rulings at all if not by writ of mandamus because the rulings about which they wish to complain are often not of a kind which they have a right to appeal. Accordingly, it has been established that the absence of a right to appeal from a judicial order is enough to meet the prerequisite to mandamus relief that there be no other adequate remedy. *E.g., State ex rel. Holmes v. Klevenhagen,* 819 S.W.2d 539, 541–42 (Tex.Crim.App.1991) (mandamus will lie to direct rescission of an order granting habeas corpus relief from an extradition warrant).

This proposition is, if anything, even more problematic than the "clear right to relief" rule because it implicates separation-of-powers issues. Plainly, it is the policy of our Legislature that the State not be permitted to appeal judicial rulings in criminal cases except under those circumstances expressly permitted by statute. *See* Tex.Code Crim. Proc.Ann. art. 44.01 (West Supp.1993). If a statute does not allow the appeal of a ruling, then the exercise of our extraordinary writ

jurisdiction to review it frustrates the evident design of our statute law, brazenly seizing from the legislative department ultimate authority to determine what is appealable. Such a practice is fundamentally at odds with our form of government. Rather than circumvent the ordinary appellate process, we should instead insist that mandamus not lie merely to evaluate the correctness of court decisions which are not reviewable on appeal, no matter how plainly erroneous those ruling may seem. Since mandamus is not available to force a particular result in matters calling for the exercise of judgment or discretion anyway, the Court should not invoke absence of an appellate remedy to justify use of its original jurisdiction as a convenient vehicle for the judicial review of otherwise unappealable orders.

Although, in the instant cause, the Court pays lip service to these precepts, its behavior once again parts company with its principles. Acknowledging that "mandamus may not be used to give the State a right to appeal that was not granted by the Legislature," the Court then blinks reality in its next sentence by pretending that statutory limitations on the right to appeal pose "no impediment to the State's use of mandamus to correct judicial action *that is clearly contrary to wellsettled law.*" Slip Op. at 3 (emphasis in original). Surely, no one is really expected to believe this. Even on direct appeal, this Court and the lower appellate courts may not reverse or reform the judgments or orders of trial courts unless those courts have acted contrary to existing law, probably not unless they have clearly done so. Yet, it is upon the basis of this distinction that we are expected to recognize a significant difference between mandamus proceedings and direct appeals. The expectation is really nothing but wishful thinking, for there is no difference in fact. Everyone knows that the judgment of a court should not be set aside by any method, including mandamus *and* direct appeal, unless there is error in it.

The writ of mandamus is supposed to be an extraordinary remedy, exercised only when the law imposes a clear ministerial duty upon a public official which cannot be

judicially enforced by any other means. Having a legal remedy does not mean winning on the merits. It means having access to the courts. Assuming that Respondent in the instant cause had refused to perform a ministerial duty of his office and that Relator was clearly entitled to the performance of that duty on his behalf or for his benefit, then mandamus would undoubtedly be available to compel its performance, assuming that no ordinary and adequate legal avenue for obtaining the same relief was available. But because Relator was given a full and fair hearing of his position on the question of constitutional privilege by an impartial judge, and because that question was resolved by the exercise of judicial and discretionary authority, it follows not only that Relator's application in the instant cause fails to seek performance of a ministerial duty, but also that his legal remedy in the trial court was adequate, whether or not the judge's ruling might have been erroneous in fact. Because Relator was legally disentitled to appeal that ruling, the absence of an appellate remedy is no basis, standing alone, for extraordinary relief.

Our mandamus jurisprudence is greatly in need of coherent principles and consistent application. The present body of case law, written by this Court during the last ten years, inexplicably fails to meet this need, and the Court's opinion in this case only exacerbates the problem by encouraging invocation of its mandamus authority for the review of ordinary judicial errors. What we are left with is a system perilously close to full appellate supervision of lower court decision-making by means of mandamus and prohibition. The only pretext which still inhibits review of all such errors through the extraordinary writ process is the undefinable, and ultimately indefensible, notion that some decisions of the lower courts are more obviously wrong than others. I cannot join in such a cavalier dismantling of the appellate process.

CLINTON, MILLER and OVERSTREET, JJ., join.

BAIRD, Judge, concurring to the Denial of Motion for Rehearing.

Relator, Fort Bend County District Attorney, subpoenaed the real parties in interest, four television news reporters, and certain evidence in their possession, hereinafter "newsmen." The newsmen moved to quash the subpoenas contending the First Amendment and Tex. Const. art. I, § 8 provide a qualified journalistic privilege. Respondent, a County Court at Law Judge in Fort Bend County, heard evidence on the motion and quashed the subpoenas. Relator sought mandamus from this Court setting aside respondent's order quashing the subpoenas. On original submission we conditionally granted the requested relief but withheld the issuance of the writ of mandamus to allow respondent an opportunity to conform his actions to our opinion. The newsmen now seek rehearing contending: 1) our failure to recognize a qualified reporter's privilege violated rights held by the newsmen under the First Amendment of the United States Constitution and art. I, § 8 of the Texas Constitution; and, 2) mandamus may not lie because respondent's actions were discretionary and not in conflict with clear, binding precedent from this Court. Motion for Rehearing pg. 2. I believe our opinion on original submission adequately considered and addressed the constitutional issues raised by the newsmen and no further discussion is warranted here. However, I write separately to address the questions that have arisen concerning our mandamus authority.

### I.

Our authority to issue writs of mandamus is derived from Tex. Const. art. V., § 5 (". . . the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition and certiorari.") and Tex. Code Crim.Proc.Ann. art. 4.04(1). To be entitled to mandamus relief, relator must demonstrate: 1) there is no other adequate remedy at law available; and, 2) the act sought to be compelled is a ministerial act. *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Cr.App. 1991); *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421 (Tex.Cr.App.1990); *and, Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Cr.

App.1989).[1] Neither respondent nor the newsmen contend relator had an adequate remedy. Therefore, relator has satisfied the first requirement. However, whether respondent's actions were ministerial or discretionary is an issue which has not only divided the parties, but this Court as well.

## II.

In *Curry v. Gray,* 726 S.W.2d 125 (Tex.Cr.App.1987), Judge Gray granted a motion to dismiss a capital murder prosecution after finding the prosecution was barred by the prohibitions against double jeopardy. Relator sought a writ of mandamus to set aside Judge Gray's order. *Id.,* 726 S.W.2d at 126–127. We denied the application holding Judge Gray's order was a discretionary act and not ministerial:

> Deciding *how* to rule after considering a motion to dismiss, however, is not a ministerial act ... Although the court may be compelled to consider a motion, mandamus or prohibition is not available to require that the judge rule a certain way on that motion.

*Id.,* 726 S.W.2d at 128.

In the instant case, Judge Meyers and the newsmen believe that the instant order quashing the subpoenas is the equivalent of Judge Gray's dismissal order. Thus, they believe our opinion on original submission constituted a departure from *Gray,* and that we have deleted the requirement that the acts sought to be compelled be ministerial. According to the newsmen, mandamus will now lie to correct any legal error committed by a trial judge. *See,* Motion for Rehearing pp. 4–5. I disagree.

In *Gray,* we acknowledged that the trial judge:

> ... had to consider the sufficiency of the motion, the facts supporting the motion, and decide whether the law applied to

those facts. The particular ruling made on the motion was clearly a discretionary/judicial act, and *not an act compelled by law.*[2] *Id.,* 726 S.W.2d at 128. Thus, Judge Gray was required to determine the applicable facts, research and determine the applicable law, and apply that law to the facts. Such an act is clearly discretionary.

## III.

While *Gray* recognized a trial judge's limited right to be wrong in his discretionary judgment, *Id.,* 726 S.W.2d at 128, *Gray* is inapplicable to the instant case. An act which is theoretically discretionary "may nonetheless be 'ministerial' in *application* if the facts and circumstances of a given case lead to but one rational course of action." *Buntion v. Harmon,* 827 S.W.2d 945, 947 n. 2 (Tex.Cr.App.1992) (emphasis in original). A trial judge has the discretion to determine facts at issue and the law which governs those facts, but a trial judge has no discretion to ignore the Texas Rules of Evidence or controlling precedent from this Court. When a trial judge is presented with an issue where there is no factual dispute, and clear, binding and unequivocal precedent compels resolution of the issue in only one manner, the trial judge has a ministerial duty to resolve that issue in that manner; the trial judge's actions are compelled by law. *Perkins v. Court of Appeals,* 738 S.W.2d 276, 284 (Tex.Cr.App.1987) ("We agree with the court of appeals that 'A trial court may be directed by mandamus to enter a particular judgment if it is the only proper judgment that can be rendered in the circumstances ...' "). As we stated in *Texas Dept. of Corrections, Etc. v. Dalehite,* 623 S.W.2d 420 (Tex.Cr.App.1981):

> ... An act is said to be ministerial where the law clearly spells out the duty to be performed ... and does so with such certainty that nothing is left to the exercise of discretion or judgment.

*Id.,* 623 S.W.2d at 424 (citing *Forbes v. City of Houston,* 356 S.W.2d 709 (Tex.Civ.App.1962).

1. In several recent opinions our focus on whether the act was ministerial appeared to change slightly when we considered whether the relator held a "clear right" to the relief sought. However, this apparent change did not alter our traditional mandamus approach. As we held in *State ex rel. Sutton v. Bage,* 822 S.W.2d 55 (Tex.Cr.App.1992):

> ... [W]e have repeatedly held that [mandamus] is available when the relator can estab-

lish two things: first, that under the relevant law and facts, he has a *clear right to the relief sought, i.e., the act he seeks to compel is ."ministerial"....*

*Id.,* 822 S.W.2d at 57.

2. All emphasis is supplied unless otherwise indicated.

In the instant case, the facts underlying the issue presented to the trial judge were not disputed. Further, resolution of the issue presented, whether the news reporters held a qualified journalistic privilege under either the First Amendment or Tex. Const. art. I, § 8, required no judicial or legal reasoning. Tex.R.Crim.Evid. 501 provided:

> Except as otherwise provided by these rules or by Constitution, statute, or court rule prescribed pursuant to statutory authority, no person has a privilege to:
>
> (1) Refuse to be a witness; or
>
> (2) Refuse to disclose any matter; or
>
> (3) Refuse to produce any object or writing; or
>
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

As we stated on original submission, no constitutional provision, statute or court rule provided the newsmen with a "privilege, qualified or otherwise, to withhold evidence relevant to a pending criminal prosecution." *State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 775 (Tex.Cr.App.1994); *and,* Tex.Code Crim.Proc.Ann. Chapter 5. Indeed, in *Ex parte Grothe,* 687 S.W.2d 736 (Tex.Cr.App. 1984), we considered the relationship between the "free press in our society" and the society's interest in the production of all relevant evidence at a criminal trial. *Id.,* 687 S.W.2d at 739. Nevertheless, we rejected the journalistic privilege, finding "[t]he need to develop all facts in an adversarial system of criminal justice is fundamental and comprehensive." *Id.,* 687 S.W.2d at 739. Therefore, respondent was presented with clear, binding and unequivocal precedent which compelled rejection of the journalistic privilege claimed by the newsmen; respondent had no discretion to consider and create such a privilege.

For these reasons, I join in the denial of the motion for rehearing.