COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | |
| § | No. 08-13-00147-CR |
| IN RE: THE STATE OF TEXAS, § | |
| § | AN ORIGINAL PROCEEDING |
| Relator. § | |
| § | IN MANDAMUS |
| § | |

## O P I N I O N

The State of Texas, Relator, has filed a petition for writ of mandamus against the Honorable Alma Trejo, Judge of the County Criminal Court at Law No. 1 of El Paso County, Texas (hereinafter referred to as Respondent or the trial court) requesting that we order Respondent to set aside a written order prohibiting the State from speaking with the complaining witness. We conditionally grant mandamus relief.

## FACTUAL SUMMARY

This mandamus proceeding arises out of a family violence assault criminal case pending in the County Criminal Court at Law No. 1. The defendant is represented by Theresa Caballero. The case was set for jury trial on May 7, 2013. During a pretrial hearing on the morning trial was scheduled to begin, the complaining witness, Alejandra Guzman, told Respondent she did not want to talk to the District Attorney's Office. Respondent stated: "Okay. And the District Attorney's Office will not speak to you then. Thank you." The court began voir dire, but a jury

could not be seated because they "ran the panel" and an insufficient number of jurors remained. Respondent asked Guzman to come into the courtroom and advised her that the case had been re-set for trial on May 14, 2013 and she was still under subpoena. Respondent requested Guzman to remain in the courtroom until she was served with a new subpoena. Caballero informed the trial court that Guzman did not want to talk to the prosecutors and added that one of the prosecutors was harassing Guzman and following her outside of the courtroom. Respondent instructed the prosecutors that they could not talk to Guzman or follow her, and they could only serve her with the new subpoena.

On the day of trial, Respondent addressed the prosecutors and defense counsel about a conversation she had with Guzman after the May 7, 2013 hearing. After defense counsel left, Guzman approached her and said she wanted to talk to the District Attorney's Office. Respondent told her not to contact the District Attorney's Office because defense counsel was not present.

Respondent then administered the oath to Guzman and asked her whether she wanted to talk to the District Attorney's Office. Guzman replied that she did not. Respondent instructed Guzman to not approach them or go near them if she did not want to talk to them. One of the prosecutors, Aaron Shnider, told the court that Guzman had telephoned the Victim Assistance telephone and he asked permission to speak with Guzman about those conversations. Defense counsel objected. Guzman then asked the court if she could speak with defense counsel. After speaking with Caballero, Guzman told the court she did not want to speak to the prosecutor. Shnider reiterated that he needed to speak with Guzman, but Respondent told the prosecutors to "…not get near her."

After a recess, the State made defense counsel and the trial court aware that on May 8,

2013, Guzman telephoned the Victim Assistance line at the District Attorney's Office at approximately 9:00 a.m. and told Ignacio Frausto that she wanted to drop charges. The prosecutor stated that Guzman told Frausto she had made a false report. The State did not, however, have access to Frausto's notes because the computer system containing those notes was down. While waiting for Frausto to come to the courtroom and testify about his conversation with Guzman, the State requested that the trial court enter a written order regarding its ruling that the prosecutors could not speak with Guzman. Respondent entered an order which states: "This Court hereby ORDERS the State of Texas not to communicate with the complaining witness in this case, Alejandra Guzman, as per Ms. Guzman's request on the record."

Frausto testified about his conversations with Guzman. He recalled that Guzman had asked him to explain the process of dropping charges. Frausto explained that it was up to the State, not her, whether charges would be dropped. She also stated that she had reported the incident "out of anger" and he explained to her that there are legal repercussions for filing a false police report. Guzman told him she understood. Guzman stated that no one had allowed her to talk or give her input and she did not want to prosecute the case. The conversation concluded, but Guzman immediately called back and told Frausto that an attorney was not permitting her to talk. He asked which side, the State or the defense, and Guzman told him it was the defense attorney. After Frausto testified, the computer system became available again and the trial court reviewed Frausto's notes about the conversations. His notes reflect that Guzman told him that the police report was not accurate because the defendant was trying to leave and he pushed her out of the way.[1]

After speaking with Guzman privately, Caballero reported that Guzman denied making

[1] The indictment alleges that the defendant intentionally, knowingly, or recklessly caused bodily injury to Guzman by pushing her with his hands causing her to fall and strike the ground.

some of the statements attributed to her by Frausto. Caballero also related that Guzman called to tell the District Attorney's Office that she had not been pushed, but had instead fallen, and Frausto told her she could be charged with filing a false police report. Respondent appointed Ralph Garcia from the Public Defender's Office to represent Guzman and he advised her regarding her Fifth Amendment rights, perjury, and filing a false police report. Garcia informed the trial court that Guzman intended to testify and would not invoke her right to remain silent, so the trial proceeded. When the State called Guzman as a witness later in the trial, however, she immediately indicated she did want to answer any questions. Garcia conferred with Guzman, and based on his advice, she stated that she was invoking her Fifth Amendment right to remain silent.

The trial continued with the State calling witnesses other than Guzman. In the meantime, the State filed a motion for emergency relief with this Court and provided Respondent with a copy of the motion. In an effort to avoid the trial being stayed, Respondent called Guzman to the bench and stated:

> I had told you earlier that you were not to communicate with the District Attorney's Office. I'm making it perfectly clear right now that it is your option whether you want to communicate with them or not. They can try and ask you questions and if they keep harassing you or something, feel free to file a police report. It's up to you whether you wish to communicate with the District Attorney's Office. I am not preventing you from communicating with the District Attorney's Office.

The prosecutor asked Respondent if she was lifting her prior order, and Respondent replied: "I'm not lifting anything."

The State subsequently called Guzman as a witness to establish preliminary facts, including her relationship with the defendant, but the prosecutor did not ask her any questions about the alleged assault because Guzman had indicated outside of the jury's presence she was

going to invoke her right to remain silent. We stayed the proceedings in the trial court pending our review of the mandamus petition.

## INTERFERENCE WITH PROSECUTORIAL FUNCTION

In its sole issue, the State contends that Respondent clearly abused her discretion by prohibiting the prosecutors from speaking to the complaining witness in a criminal case because the order exceeds the trial court's constitutional and statutory authority and interferes with the District Attorney's prosecutorial function. The real party in interest, Defendant Garcia, responds that the trial court merely prohibited the State from harassing the complainant.

*Mandamus Standard of Review*

A party seeking a writ of mandamus in a criminal case must make two showings: (1) that there is no adequate remedy at law to redress the alleged harm; and (2) that the act the relator seeks to compel must be ministerial rather than discretionary in nature. *See e.g. Board of Pardons and Paroles ex rel. Keene v. Court of Appeals for the Eighth District*, 910 S.W.2d 481, 483 (Tex.Crim.App. 1995)(orig. proceeding); *In re State of Texas*, 390 S.W.3d 439, 442 (Tex.App.--El Paso 2012, orig. proceeding); *In re State of Texas*, 304 S.W.3d 581, 583 (Tex.App.--El Paso 2010, orig. proceeding). A matter is ministerial in nature if the law clearly spells out the duty to be performed with such certainty that nothing is left to the exercise of discretion or judgment. *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex.Crim.App. 1994)(orig. proceeding); *In re State*, 390 S.W.3d at 442. It is undisputed that the State cannot appeal the ruling. The only issue is whether Respondent had discretion to prohibit the State from speaking with the complaining witness.

It has been often stated that an attorney has a duty to his client to interview potential witnesses. *See e.g., Stearnes v. Clinton*, 780 S.W.2d 216, 217-18 (Tex.Crim.App. 1989)(holding

that attorney has duty to interview potential witnesses and trial judge lacked authority to remove defense counsel from case for interviewing witness without permission of the DA's Office); *Butler v. State*, 716 S.W.2d 48, 55 (Tex.Crim.App. 1986)(in context of reviewing ineffective assistance of counsel claim, court stated that defense counsel has duty to seek out and interview potential witnesses). In criminal cases, this duty is almost always discussed in terms of defense counsel's duty to the accused. The primary function of a district or county attorney is to prosecute the pleas of the State in criminal cases. *Meshell v. State*, 739 S.W.2d 246, 254 (Tex.Crim.App. 1987). All prosecuting attorneys have a duty to see that justice is done and they are prohibited from suppressing facts or secreting witnesses capable of establishing the innocence of the accused. TEX.CODE CRIM.PROC.ANN. arts. 2.01, 2.02 (West 2005). Implicit in these duties is the requirement that a prosecutor interview witnesses who are willing to speak to him. A prosecutor who is prohibited by a trial court from interviewing or attempting to interview a witness cannot carry out the obligations of his office. We conclude that the trial court did not have the authority or discretion to prohibit the State from speaking with or attempting to speak with the complainant. We conditionally grant mandamus relief and order Respondent to set aside her written order and any verbal orders prohibiting the State from interviewing the complaining witness. The writ of mandamus will issue only if Respondent fails to comply within a reasonable period of time.

May 30, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Chew, C.J. (Senior Judge)
Chew, C.J. (Senior Judge), sitting by assignment

(Do Not Publish)