Rolando PEREZ, Appellant

v.

The STATE of Texas, Appellee

NO. 14–14–00887–CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 5, 2016

**376**

Crespin Michael Linton, Houston, TX, for Appellant.

Michelle R. Townsend, Jeri Yenne, Angleton, TX, for State.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett Busby, Justice

A jury convicted appellant Rolando Perez of felony driving while intoxicated (DWI). *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b) (West Supp.2014). After appellant pled true to the enhancement paragraph for two previous DWI convictions, the trial court sentenced him to 12 years' confinement and a $5,000 fine.

On appeal, appellant seeks an acquittal on the ground that the evidence is legally insufficient to support his conviction for felony DWI. We hold the evidence is legally sufficient for a rational juror to find beyond a reasonable doubt that appellant committed the offense.

Appellant also seeks a new trial, contending that the trial court erred by denying his motion to suppress the results of an alcohol concentration test of his blood, which was drawn without a warrant under the mandatory blood draw provision of the Texas Transportation Code. We conclude that the taking of appellant's blood sample violated his Fourth Amendment rights be-

cause the State has not shown consent or any other applicable exception to the warrant requirement. We further conclude that the trial court's error in denying the motion to suppress was not harmless beyond a reasonable doubt. We therefore reverse the trial court's judgment and remand the case to the trial court.

### BACKGROUND

#### A. Arrest and blood draw

At approximately 10:14 p.m. on September 5, 2012, Pearland Police Department Officer James Baldwin stopped a vehicle for speeding. As shown by video from the officer's dash camera, the vehicle pulled into a gas station parking lot where Officer Baldwin made contact with appellant, the vehicle's driver. When Officer Baldwin approached the vehicle, he detected a strong odor of an alcoholic beverage emanating from inside the cabin.

Officer Baldwin ran a criminal record check on appellant's driver's license and found it to be suspended. Officer Baldwin arrested appellant and, while placing him in the back of the patrol car, observed the odor of alcohol on appellant's breath. When asked how much he had to drink, appellant stated "one drink." When asked to submit to field sobriety tests, appellant refused to participate without his attorney present. Appellant also refused to give a voluntary breath or blood sample.

Because appellant's record check had revealed two prior DWI convictions, Officer Baldwin took appellant to Texas Emergency Care of Pearland for a mandatory blood draw. In lieu of obtaining a warrant for a blood sample, Officer Baldwin testified that he elected to take a mandatory blood draw under section 724.012(b)(3)(B) of the Texas Transportation Code. The statute requires police officers to take a mandatory blood draw whenever they pos-

sess, at the time of arrest, reliable information from a credible source that the person has been previously convicted of two or more DWI offenses. Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011).

After arriving at Texas Emergency Care, appellant told Officer Baldwin that he had AIDS, which caused him to be adversely affected by alcohol. According to Officer Baldwin, appellant then allowed him to conduct the horizontal gaze nystagmus (HGN) test. Officer Baldwin observed six recognized clues of intoxication. Registered nurse Terry Kelsey withdrew two vials of blood from appellant. A blood test later revealed that appellant had a blood alcohol level of 0.142, nearly twice the legal limit.

**B. Motion to suppress**

Appellant filed a written motion to suppress the blood test results alleging, in part, violations of the Fourth Amendment of the United State Constitution; Article 1, Sections 9 and 10 of the Texas Constitution; and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure. Appellant alleged the blood sample was taken in violation of the Fourth Amendment without his consent, without a warrant, and without the existence of any exigent circumstance.

In its response to appellant's motion, the State argued first that a warrantless blood draw is valid under the implied-consent framework of the Texas Transportation Code. Pursuant to the statute, if a person is arrested for a DWI-related offense while operating a motor vehicle in a public place, the person is deemed to have consented to the taking of one or more specimens of the person's breath or blood for analysis to determine alcohol concentration. Tex. Transp. Code Ann. § 724.011(a) (West 2011). Because consent is an established exception to the warrant requirement, the State claimed appellant's implied consent

through the statute rendered the warrantless blood draw a reasonable search under the Fourth Amendment.

The State also offered other reasons why the blood draw was valid. Its second reason was that the search-incident-to-arrest exception to the warrant requirement applied because the scope of an officer's search may extend to obtaining a blood sample as long as it is reasonable under the circumstances. Third, the State argued that appellant's privacy interest in his blood is minimal and is therefore outweighed by the State's law-enforcement interest.

The parties agreed upon and submitted to the trial court a stipulation of evidence. No hearing was held. The trial court issued an order on July 18, 2014, making findings of fact based on the stipulation and providing conclusions of law denying appellant's motion to suppress. The trial court examined the recent United States Supreme Court decision in *Missouri v. McNeely,* in which the Court held that the natural dissipation of alcohol in the bloodstream does not constitute a per se exigency in every drunk-driving investigation, but must be evaluated on a case by case basis. 133 S.Ct. 1552, 1568 (2013). Because the State did not base its argument on the exigent-circumstances exception, the trial court concluded that *McNeely* did not apply to this case and did not foreclose the State from using implied consent as a basis for the warrantless blood draw.

In addition, the trial court relied on *Johnston v. State,* which held there is a presumption that venipuncture blood draws are reasonable under the Fourth Amendment. 336 S.W.3d 649, 660 (Tex. Crim.App.2011). The trial court also cited this Court's precedent in *Franklin v. State* for the proposition that a blood draw is permissible under the Fourth Amendment if the police were justified in requiring the

suspect to submit to a blood test and employed reasonable means and procedures in taking the blood. *Franklin v. State*, No. 14–11–00961–CR, 2012 WL 3861970, at *6 (Tex.App.–Houston [14th Dist.] Sept. 6, 2012, no pet.) (mem. op., not designated for publication) (holding police officers acted reasonably when extracting blood sample because procedure was carried out in accordance with acceptable medical practices by a registered nurse in a medical facility). The trial court concluded that appellant had not identified anything inherently unsafe about the environment in which the procedure took place and therefore failed to meet his burden of making a prima facie showing that the blood draw was not conducted in a reasonable manner.

Although not argued by the State, the trial court also concluded that the federal good-faith exception prevented suppression in this case. According to the trial court, section 724.012 of the Transportation Code is one of several Texas statutes that either permit or mandate warrantless searches or arrests.[1] Under the circumstances in this case, the trial court believed Officer Baldwin acted in good-faith reliance on section 724.012, which mandated that he require appellant to submit to a warrantless blood draw. The trial court disagreed with and declined to follow this Court's holding in *Douds* (then on petition for review to the Court of Criminal Appeals) that the Texas exclusionary statute, Tex. Code Crim. Proc. Art. 38.23, does not incorporate federal judge-made exceptions for officers' good-faith reliance on existing statutes; instead, it only provides an exception for officers acting in good-faith

reliance upon a warrant. *Douds v. State*, 434 S.W.3d 842, 861 (Tex.App.–Houston [14th Dist.] 2014), *rev'd on other grounds*, 472 S.W.3d 670 (Tex.Crim.App.2015). Despite the lack of a warrant, the trial court concluded that the history of Article 38.23 showed the good-faith exception applied in this case.

Finally, after upholding the officer's conduct under the good-faith exception to the exclusionary rule, the trial court declared the Texas exclusionary rule should not be applicable to this case. *See* Tex. Code. Crim. Proc. Ann. art. 38.23(a).

> This court has not found, and has not been cited to, any case which holds that Chapter 724 of the Transportation Code is unconstitutional ... or that blood drawn under a statute or procedure similar to Chapter 724 of the Transportation Code would be illegally obtained or that Officer Baldwin would have had any reason to believe the blood evidence was illegally obtained. Therefore, Article 38.23 C.C.P should not be applicable in this case.

The trial court reasoned that because the statute mandating blood draws had not been held unconstitutional, evidence obtained pursuant to the statute was not obtained illegally; thus, the exclusionary rule does not apply.

## C. Trial

The State called three witnesses in the guilt-innocence phase of trial. Registered Nurse Terri Kelsey testified that she drew appellant's blood under the direction of Officer Baldwin. Kelsey did not remember appellant being combative, nor did she

---

**1.** The trial court cited three other Texas statutes for this proposition: Tex. Code Crim. Proc. Ann. art. 18.16 (authorizing any person to seize personal property that has been stolen as well as the person suspected of committing the theft and bringing that person before a magistrate or peace officer); Tex. Code Crim. Proc. Ann. art. 14.01 (authorizing a peace officer or any person to arrest an offender without a warrant when a felony offense is committed in his presence or within his view); and Tex. Fam. Code Ann. § 52.01 (West 2014) (allowing a child to be brought in to custody with a warrant in certain situations).

testify that she had any conversation with appellant regarding consent. Officer Baldwin testified to the facts leading up to appellant's arrest and stated that he detected the odor of alcohol on appellant's breath. Officer Baldwin testified that appellant refused to submit to any field sobriety tests without his attorney being present. Officer Baldwin also recounted his conversation with appellant at the hospital, in which appellant consented to take the HGN test. Officer Baldwin concluded that appellant exhibited all six signs of intoxication that can be revealed through the test. In summary, Officer Baldwin stated that he believed appellant was intoxicated based on the results of the HGN test, the "smell of alcohol" on his breath, his "up-close personal appearance," and his "refusal to do any testing."

Paul Van Dorn, director of the Brazoria County Sheriff's Office Crime Laboratory, testified that he tested appellant's blood to determine the concentration of alcohol in the sample. Van Dorn stated that appellant's blood-alcohol content (BAC) was 0.142 grams per 100 milliliters of blood, which he explained to the jury was almost double the 0.08 legal limit. He concluded that appellant's BAC at the time he was stopped would not have differed much from this result because appellant's blood was drawn only an hour after the traffic stop.

The jury found appellant guilty of felony driving while intoxicated, as charged in the indictment. At the punishment phase, appellant pled "true" to the enhancement allegation in the indictment that he had two previous DWI convictions.

## ANALYSIS

### I. The evidence was legally sufficient to support appellant's conviction for felony driving while intoxicated.

Appellant was charged under section 49.04(a) of the Texas Penal Code, which provides that a "person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." In his first issue, appellant contends that the evidence is legally insufficient to show that he operated his vehicle while intoxicated.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex.Crim.App.2013). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim. App.2007). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex.Crim.App. 2012). Although we consider all evidence presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). When the record supports conflicting inferences, a reviewing court must presume that the finder of fact resolved the conflicts in favor of the State and defer to that determination. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Priego v. State*, 457 S.W.3d 565, 569 (Tex.App.–Texarkana 2015, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997)). In the court's charge, the jury received the statutory

definition of "intoxicated," which is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination thereof into the body or by having an alcohol concentration of .08 or more." Tex. Penal Code Ann. § 49.01(2) (West Supp.2014). The statutory definition provides two methods of proving a person is intoxicated. *See Bradford v. State*, 230 S.W.3d 719, 721–22 (Tex.App.–Houston [14th Dist.] 2007, no pet.). The two methods are known, respectively, as the impairment theory of intoxication and the per se theory of intoxication. *Id.* at 722. They are not distinct offenses, distinct elements of the offense, or even alternative means of committing the offense, but are instead alternative means by which the State may prove intoxication. *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex.Crim.App.2003). Because the two methods of proof are not mutually exclusive, evidence offered under the per se theory can also support a finding that a person is impaired. *See Bradford*, 230 S.W.3d at 722.

■ Appellant contends there is insufficient evidence of intoxication because evidence showing that he was not driving while intoxicated overwhelmingly outweighs evidence that he was. According to appellant, the only evidence that he drove while intoxicated is the blood test results and the testimony of Officer Baldwin that he smelled alcohol on appellant's breath. Appellant argues this evidence is greatly outweighed by the following evidence: (1) his statement that he consumed only one drink of alcohol; (2) Officer Baldwin's improper administration of the HGN

test; and (3) the evidence that appellant never lost the use of his mental and physical faculties. Thus, appellant contends, a rational trier of fact could not have found the elements of DWI satisfied beyond a reasonable doubt. We disagree.

The State introduced the BAC evidence to establish appellant's intoxication under the per se theory. Van Dorn, the State expert who calculated the blood alcohol content, testified that appellant's BAC was 0.142, which far exceeds .08. Van Dorn also extrapolated what appellant's BAC would likely have been at the time of his arrest one hour prior to the blood draw. Based on the average rate an individual's body eliminates alcohol, Van Dorn concluded appellant's BAC would not have been much different—possibly 0.015 higher—when he was arrested.

Officer Baldwin's testimony regarding appellant's actions leading up to and following his arrest as well as appellant's performance during the HGN test were introduced to prove appellant's intoxication under the impairment theory. The jury heard that appellant admitted to having consumed at least one alcoholic drink that evening. Officer Baldwin testified that he detected alcohol on appellant's breath and later conducted a HGN test, which appellant failed. Officer Baldwin described to the jury the six signs of intoxication that the HGN test detects and explained how he arrived at his conclusion that appellant demonstrated all six.[2] He concluded appellant was intoxicated based on his training and experience as a police officer and his interaction with appellant that evening.

**2.** On cross-examination, Officer Baldwin acknowledged that he did not ask appellant questions about his physical condition to ensure he was a good candidate for the HGN test. Regardless of whether the test was properly administered, we consider all testi-

mony regarding the test when reviewing the sufficiency of the evidence. *See Clayton*, 235 S.W.3d at 778 ("Our review of 'all the evidence' includes evidence that was properly and improperly admitted.").

Officer Baldwin also testified that appellant refused to perform any field sobriety tests and refused to sign the DIC–24 form acknowledging he understood the Texas implied consent law. The jury may consider appellant's refusal to provide a breath or blood sample as probative evidence of his intoxication because it establishes consciousness of guilt on his part. Tex. Transp. Code § 724.061 (West 2011); *see also Bartlett v. State,* 270 S.W.3d 147, 153 (Tex.Crim.App.2008); *Jackson v. State,* 468 S.W.3d 189, 193 (Tex.App.–Houston [14th Dist.] 2015, no pet.). Appellant also showed consciousness of guilt through the statements he made in the police car. After his arrest, appellant conceded he was in trouble and was "not going to get out for at least two or three years." The jury could have interpreted appellant's statements as evidence of his consciousness of guilt regarding intoxication. *See Cueva v. State,* 339 S.W.3d 839, 881–82 (Tex.App.–Corpus Christi 2011, pet. ref'd) ("Any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a consciousness of guilt may be received as a circumstance tending to prove that he committed the act with which he is charged.").

Likewise, the jury was free to disbelieve the evidence that appellant was not intoxicated and resolve any conflict in favor of the State. *See Navarro v. State,* 469 S.W.3d 687, 693 (Tex.App.–Houston [14th Dist.] 2015, pet ref'd). Viewing the evidence in the light most favorable to the verdict, the jury reasonably could have found that appellant was intoxicated beyond a reasonable doubt. *Annis v. State,* 578 S.W.2d 406, 407 (Tex.Crim.App.1979) (holding uncorroborated testimony of arresting officer is sufficient to prove element of intoxication); *Kirsch v. State,* 306 S.W.3d 738, 745–46 (Tex.Crim.App.2010) (holding State's evidence sufficient to sup-

port jury charge on the per se theory of intoxication if it includes either (1) expert testimony of retrograde extrapolation, or (2) other evidence of intoxication that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test). Because there is legally sufficient evidence of appellant's intoxication, we overrule appellant's first issue.

## II. The trial court erred by denying appellant's motion to suppress.

In his second issue, appellant argues the warrantless blood draw violated his Fourth Amendment protection against unreasonable searches and seizures by requiring him to submit to a blood draw without his consent and without the existence of an exigent circumstance or other exception to the warrant requirement. Because we conclude that the stipulated facts in the record do not establish the existence of an exception to the warrant requirement, we hold the warrantless blood draw violated the Fourth Amendment.

### A. Standard of review

█ We review a denial of a motion to suppress evidence under a bifurcated standard. *Douds,* 434 S.W.3d at 846. We give almost total deference to the trial court's express or implied determinations of historical facts, but we review de novo the court's application of the law of search and seizure to those facts. *Id.*

█ Because the facts were stipulated and no hearing occurred on the motion to suppress, the only questions presented to us involve the application of the law to the facts. *Garcia v. State,* 296 S.W.3d 180, 183 (Tex.App.–Houston [14th Dist.] 2009, no pet.). Although we review the trial court's decision de novo, we must allow for reasonable deductions from the stipulation. *Id.; see also Yorko v. State,* 699 S.W.2d

224, 226 (Tex.Crim.App.1985). We must uphold the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Garcia v. State,* 296 S.W.3d 180, 184 (Tex.App.–Houston [14th Dist.] 2009, no pet.) (citing *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim.App. 2003)).

**B. Appellant preserved his issue for appellate review.**

 Before addressing the merits of appellant's second issue, we consider whether appellant preserved the issue for our review. To preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1 generally requires that: (1) the complaining party made a timely request, objection, or motion that was sufficiently specific to make the trial court aware of the complaint; and (2) the trial court either ruled on the request, objection, or motion, or refused to rule and the complaining party objected to that refusal. Tex. R. App. P. 33.1(a); *see Douds,* 472 S.W.3d at 674. "As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim.App.1992).

 Although the State conceded at oral argument that appellant preserved error on this issue, we also conduct our own review of preservation. *See Bekendam v. State,* 441 S.W.3d 295, 299 (Tex.Crim.App. 2014). At trial, appellant timely filed a motion to suppress blood test results that specifically asked the trial court to "suppress all evidence seized as a result of an unconstitutional and illegal search, namely a blood extraction taken without a warrant and without the consent of Defendant." The detailed written motion was tailored to the facts of appellant's particular case and cited relevant authority. Appellant based his objection on, among other grounds, the Fourth Amendment protection against unreasonable searches and seizures and argued "[a]ll evidence obtained as a result of the warrantless and unconsented blood draw should be suppressed from use at trial of this cause under Article 38.23, Code of Criminal Procedure." Appellant also addressed the conflict between the Fourth Amendment and the State's reliance on section 724.012(b)(3)(B) of the Texas Transportation Code to conduct warrantless, nonconsensual blood draws absent exigent circumstances.

For example, appellant asserted in the motion that "the arresting officer, acting under the apparent authority of section 724.012, Transportation Code, without a judicial warrant, nor even attempting to obtain a warrant," obtained a "mandatory, nonconsensual blood draw." Appellant then argued that the draw was a warrantless search and violated the Fourth Amendment because it did not fall within a recognized exception to the warrant requirement. Among other things, appellant explained in detail why the exigent circumstances exception did not apply in light of the then-recent decision in *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Appellant also argued that "state law does not trump Federal Constitutional rights," and that to the extent section 724.012 "purports to require a police officer to conduct a mandatory blood draw ... without a warrant" and without establishing a recognized exception to the warrant requirement, "it is in conflict with the 4th Amendment ... and, therefore, unconstitutional." Appel-

lant also specifically asserted that the search "was not the result of actual, voluntary, informed, and knowledgeable consent by Defendant."

We hold appellant's motion was sufficiently specific to make the trial court aware of the complaint he now presents on appeal: that the results of alcohol testing on his blood drawn without a warrant must be suppressed because no exception to the Fourth Amendment's warrant requirement applied. *See Perez v. State*, 464 S.W.3d 34, 43 (Tex.App.–Houston [1st Dist.] 2015, pet. ref'd). Appellant's complaint was preserved when the trial court ruled on the motion. Accordingly, we now address whether the warrantless taking of appellant's blood sample violated the Fourth Amendment.

**C. The warrantless, non-consensual blood draw violated appellant's Fourth Amendment rights.**

██ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless they meet certain requirements. U.S. Const. amend. IV; *see also* Tex. Const. art. I, § 9. The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The parties stipulated that "in lieu of obtaining a warrant for a blood sample, [Officer Baldwin] elected to utilize the Texas Mandatory Blood Draw Statute [section 724.012(b) of the Transportation Code] in order to collect a sample of the defendant's blood."

██ "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court of the United States] has

inferred that a warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 459, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). Thus, "it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim.App.2012). The warrant requirement has been described as one of "the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson v. United States*, 333 U.S. 10, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

▪██ "The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn...." *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). Those exceptions include "voluntary consent to search, search under exigent circumstances, and search incident to arrest." *McGee v. State*, 105 S.W.3d 609, 615 (Tex.Crim.App.2003). Once the defendant has established that a search occurred without a warrant, the State has the burden to show that the search falls within one of these exceptions. *Id.; see also State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex.Crim.App.2011); *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005).

The State relied on a theory of statutory implied consent in its response to appellant's motion to suppress in the trial court, but the State did not brief that theory on appeal and expressly waived it at oral ar-

gument.[3] The State also did not brief and expressly waived its search-incident-to-arrest and balancing-of-interests arguments [4] We therefore address the State's sole remaining argument for an exception: that appellant gave actual consent to the blood draw. We also address two additional grounds on which the trial court based its ruling: the reasonableness presumption articulated in *Johnston*, 336 S.W.3d at 659; and the federal good-faith exception to the exclusionary rule.[5]

** Actual consent.** The State argues for the first time on appeal that appellant gave the nurse "actual, voluntary consent" to draw his blood. Even assuming that the State may discharge its burden by raising a new warrant exception without first giving all parties and the trial court an opportunity to consider that exception and develop a record addressing it (an issue we do not decide), we conclude that the exception does not apply here. Whether appellant gave consent is a question of fact, and the State must prove consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim.App.2011). There are two forms of consent relevant to this case: express consent, which is clearly and unmistakably stated; and implied consent, which is inferred from one's conduct rather than direct expression. *See* Black's Law Dictionary 368 (10th. ed.2014). The State failed to prove that appellant gave either express or implied consent.

In its brief, the State points to appellant's lack of resistance to the blood draw to show his implied consent. Because appellant "did not physically resist" or "verbally protest" the nurse's actions, the State concludes that appellant manifested his consent to the blood draw. At oral argument, the State added that appellant's conversation with Officer Baldwin at the hospital also indicated that he had changed his mind and no longer refused to submit to a blood draw. Officer Baldwin testified at trial that appellant initiated conversation with him at the hospital while they were waiting for the nurse to set up the blood draw. Appellant informed the officer that he was sick, that he had AIDS, and that his illness affected the way his body reacted to alcohol. In response, Officer Baldwin requested permission to conduct a HGN test, and appellant agreed. Based on this conversation, the State argues appellant consented to not only the HGN test but also the blood draw.

We disagree with the State's consent argument for several reasons. First, the State's argument is contrary to the stipulation on which the trial court based its ruling. *See Velez v. State*, 240 S.W.3d 261, 265 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd). The parties stipulated that appellant "said that he would not submit to any sobriety testing without his lawyer present." They also stipulated that appellant "refused to consent to a blood or breath test." Based on the stipulation, the trial court found that appellant "refused to consent to a blood or breath test" and "did not expressly consent to the blood draw."

---

**3.** In any event, after the trial court ruled on the motion to suppress, this theory was rejected by the Court of Criminal Appeals in another case. *State v. Villarreal*, 475 S.W.3d 784, 793–95, 799–805 (Tex.Crim.App.2014).

**4.** The Court of Criminal Appeals likewise rejected these arguments in *Villarreal*, 475 S.W.3d at 807–813.

**5.** We do not address the exigent circumstances exception because the parties stipulated that this case involves a routine DWI investigation with no exigencies present.

■ Second, this Court may only consider evidence available to the trial court when it ruled on the motion to suppress. *See O'Hara v. State*, 27 S.W.3d 548, 551 (Tex.Crim.App.2000) (deciding not to consider certain testimony that occurred at trial because it was given after appellant's suppression hearing). The only exception to this rule occurs when the parties consensually relitigate the issue during trial. *Hubbert v. State*, 91 S.W.3d 457 (Tex.Crim. App.–Texarkana 2002, pet. struck) (citing *O'Hara*, 27 S.W.3d at 551). The trial court relied on the stipulation of evidence when it denied the motion to suppress prior to trial. The stipulation did not include any facts regarding appellant's behavior during the blood draw. The State's assertion that appellant gave the nurse express consent to draw his blood relies exclusively on testimony from the nurse and police officer given later at trial. Because there is no indication the parties relitigated the motion to suppress at trial, the State may not use this testimony to prove a warrant exception.

The State cites *Black v. State* to suggest that an appellate court is not limited to the evidence available at the suppression hearing, but may consider all evidence introduced at trial. 362 S.W.3d 626, 637–38 (Tex.Crim.App.2012). *Black* is not on point. At trial, the parties in *Black* relitigated the issues raised in the pre-trial suppression hearing, causing the trial court to reopen the suppression hearing to hear additional evidence. *Id.* at 629–30. On appeal, the appellate court reviewed witness testimony from trial that was considered by the trial court in the reopened suppression hearing. *Id.* at 630. The Court of Criminal Appeals acknowledged the general rule that prohibits appellate courts from considering evidence introduced after the suppression hearing. *Id.* at 635. But the court also articulated a narrow exception: where the issues involved in the pre-trial suppression hearing have been consensually relitigated by the parties during trial on the merits, consideration of the relevant trial testimony is appropriate. *Id.* at 636.

In contrast, the trial court in this case denied appellant's motion prior to the start of trial and did not reconsider the issue. The general rule therefore applies, and we may only consider evidence known to the trial court at the time of its ruling on the motion to suppress.

Third, considering the additional trial testimony would not change the result because appellant's behavior at the hospital does not imply his consent. Speaking to Officer Baldwin and allowing him to perform the HGN test does not mean that he gave consent to a blood draw. *See Florida v. Jimeno*, 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (holding suspect may limit scope of the search to which he consents). Appellant's lack of physical or verbal resistance to the nurse also gives no indication that he consented to the blood draw. The nurse's testimony establishes nothing more than appellant's acquiescence, which does not establish consent. *See Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (holding consent is not established by mere acquiescence to claim of lawful authority).

The State compares this case to *Donjuan v. State*, a recent case in which this court held the defendant expressly consented to the blood draw. 461 S.W.3d 611, 616 (Tex.App.–Houston [14th Dist.] 2015, no pet.). In *Donjuan*, the doctor asked the defendant, "Can I draw your blood?" The defendant replied "yes." *Id.* at 614. Based on this affirmative reply, we held that the defendant gave express consent to the doctor, as the request would have indi-

cated to a reasonable person that he was free to refuse. *Id.* at 617–18.

The facts in this case are notably different. The nurse did not ask appellant for consent, nor did appellant make any statement that expressed consent to the blood draw. We also reject the State's invitation to infer a DWI suspect's consent from his choice not to physically resist the medical professional conducting the blood draw. *See Bumper,* 391 U.S. at 548–49, 88 S.Ct. 1788. We see nothing in the record to indicate appellant impliedly consented to the blood draw.

For these reasons, appellant did not consent to the blood draw, either expressly or impliedly through his actions. We turn now to the trial court's additional grounds for denying appellant's motion to suppress. *See Garcia,* 296 S.W.3d at 184.

**State v. Johnston.** The trial court also denied appellant's motion to suppress based on *State v. Johnston,* 336 S.W.3d at 660, concluding appellant failed to meet his burden of showing the blood draw was unreasonable. This conclusion is based on a misreading of *Johnston* and incorrectly places the burden on the defendant.

In *Johnston,* the Court of Criminal Appeals held that the means and procedures employed in Johnston's mandatory blood draw performed at the police station by an officer who was also an experienced EMS provider were reasonable under the Fourth Amendment. *Id.* at 651, 657–664. Johnston filed a motion to suppress the blood test results, arguing that the blood draw was not a reasonable means of obtaining her blood-alcohol level and the blood draw was performed in an unreasonable manner. *Id.* at 660–61. The court applied the two-part analysis articulated in

*Schmerber* to determine the legality of the blood draw:

(1) "whether the police were justified in requiring [appellant] to submit to the blood test," and,

(2) "whether the means and procedures employed in taking [appellant's] blood respected relevant Fourth Amendment standards of reasonableness."

*Id.* at 658 (quoting *Schmerber,* 384 U.S. at 758, 86 S.Ct. 1826).

Because the police officer secured a warrant prior to conducting the blood draw, the court held the first element was satisfied and focused on the second part of the analysis. *Id.* at 658–661. In examining the means and procedures used, the court examined whether the test chosen was reasonable and whether it was performed in a reasonable manner. *Id.* at 659. The court presumed that the choice to administer a venipuncture blood draw was a reasonable means to obtain a blood alcohol level assessment and placed the burden on Johnston to show it was not. *Id.* at 660.

Johnston argued that the blood draw was not performed in a reasonable manner because it failed to meet the minimum requirements for blood draws under Chapter 724 of the Texas Transportation Code.[6] Although the blood draw did not meet the Transportation Code's requirements, the court held that the blood draw was reasonable. Because the assessment of reasonableness is purely a matter of Fourth Amendment law, compliance with Chapter 724 is only one way of establishing reasonableness under the Fourth Amendment. *Id.* The court concluded that under the totality of the circumstances, the blood was

---

6. The statute provides: "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this Chapter. The blood specimen must be taken in a sanitary place." Tex. Transp. Code § 724.017(a) (West 2011).

drawn in accordance with acceptable medical practices and therefore in a reasonable manner. *Id.* at 664.

The trial court's reliance on *Johnston* is misplaced. *Johnston* focuses solely on the second part of the *Schmerber* test: whether the police used reasonable means and procedures to obtain the blood sample. *See id.* at 659–63. The police officer's authority to obtain the sample was undisputed, as he had obtained a valid search warrant prior to executing the blood draw. *Id.* at 651. The court therefore analyzed only the following issues: whether the venipuncture blood-draw test was a reasonable means in which to analyze Johnston's blood and whether the blood test was performed in a reasonable manner. *Id.* at 659–60. The only portion of the Texas Transportation Code *Johnston* considered was section 724.017(a), which addresses the manner and means by which law enforcement may obtain the blood specimen.

▇▇ This case, however, concerns the first part of the *Schmerber* inquiry. Neither party challenges the reasonableness of using a venipuncture blood draw in this case or the reasonableness of the blood draw's execution. Rather, the issue on appeal is whether the State was justified in requiring a blood draw in the first place. Consequently, the trial court erroneously placed the burden on appellant to prove the blood draw was unreasonable. Because the parties stipulated that no warrant was obtained and appellant challenged the State's authority to conduct the blood draw without a warrant, the State had the burden to prove an exception to the warrant requirement. *Robinson*, 334

S.W.3d at 778–79. The trial court is correct that *Johnston* places the burden on a defendant to overcome the presumption that venipuncture blood draws are reasonable under the Fourth Amendment. *See Johnston*, 336 S.W.3d at 659–660. The important distinction, however, is that this presumption of reasonableness only applies to the manner and means (second) part of the *Schmerber* analysis. *See id.* The presumption of reasonableness is only considered if the court concludes that the first part of the *Schmerber* test is met.[7]

In its order, the trial court concluded that appellant "has not identified anything inherently unsafe about the environment in which the procedure to place and ... did not meet his burden of making a *prima facie* showing of a statutory violation of Chapter 724 of the Transportation Code." Thus, the trial court concluded the motion to suppress should be denied because appellant "failed to put forth evidence to sustain his burden challenging the blood draw."

As we have explained, however, the burden is on the State in this case because appellant challenges its authority to perform the blood draw without a warrant. The trial court's emphasis on the means and procedures of the blood draw is misplaced because it overlooks the issue in dispute: whether the State had the authority to conduct the blood draw. *Johnston* is inapplicable to cases like this, in which a warrant was not obtained and the means and procedures of the test are not challenged.

**Federal good-faith exception.** The trial court's second ground for denying ap-

---

7. We applied *Schmerber*'s two-part analysis in *Franklin v. State*, which the trial court cited in its order. No. 14–11–00961–CR, 2012 WL 3861970, at *5 (Tex.App.–Houston [14th Dist.] Sept. 6, 2013, no pet.) (mem. op., not designated for publication). In *Franklin*, the issues were whether the warrant relied upon to justify the draw was defective, as well as whether the draw was taken using unreasonable means and excessive force. We applied the *Johnston* presumption only to the latter issue. *Id.*

pellant's motion to suppress was the federal good-faith exception to the exclusionary rule. The trial court concluded the blood draw was admissible because Officer Baldwin acted in good-faith reliance on section 724.012 of the Texas Transportation Code, which requires police officers to obtain a blood draw from certain DWI suspects. We disagree because the Texas exclusionary statute does not recognize an exception for good-faith reliance on statutes or precedent.

Both the Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution protect the right of the people to be secure from unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. But neither constitutional provision includes a remedy for courts to apply when a person's rights under the provision are violated. *See Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 2423, 180 L.Ed.2d 285 (2011); *Perez v. State*, 11 S.W.3d 218, 223 (Tex.Crim.App.2000).

■ Federal courts employ a judge-made exclusionary remedy to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained in violation of the Fourth Amendment. *Davis*, 564 U.S. 229, 131 S.Ct. 2419 at 2423, 180 L.Ed.2d 285. Federal courts recognized that in some cases, a strict application of the exclusionary rule did not further its deterrent purpose. *See id.* Thus, the Supreme Court articulated an exception to the exclusionary rule in *United States v. Leon* that permits the use of evidence obtained by officers acting in reasonable reliance on a search warrant later found to be invalid. 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Court later expanded the exception to encompass warrantless searches based on an officer's good-faith reliance on (1) a statute that was later held unconstitutional, *Illinois v. Krull*, 480 U.S. 340, 343, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), or (2) binding appellate precedent that was later overturned. *Davis*, 131 S.Ct. at 2428–29.

■ In Texas, however, the exclusionary rule is statutory. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2006); *Miles v. State*, 241 S.W.3d 28, 33–36 (Tex.Crim. App.2007). The Texas exclusionary statute is "broader than its federal counterpart" and therefore more protective of individual rights. *Miles*, 241 S.W.3d at 34. The Court of Criminal Appeals has held that exceptions to the federal exclusionary rule only apply under the Texas exclusionary statute if they are consistent with the plain language of the statute. *Compare Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex.Crim.App.2013) (adopting federal independent-source exception), *with State v. Daugherty*, 931 S.W.2d 268, 270 (Tex.Crim. App.1996) (declining to adopt federal inevitable-discovery exception).

In relevant part, Article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case . . . .

(b) It is an exception to the provisions of subsection (a) . . . that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

■ . Tex. Code Crim. Proc. Art. 38.23. The good-faith exception in subsection (b) is written to apply when the law enforcement officer acts pursuant to a warrant. Here, the exception does not apply because Officer Baldwin did not act pursuant to a warrant. The Court of Criminal Appeals has previously rejected an effort to broaden the statutory good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule. *Howard v. State*, 617 S.W.2d 191, 193 (Tex.Crim.App.1979) (op. on reh'g) (declining to adopt federal good-faith doctrine of *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), a predecessor to *Krull*); *see also Daugherty*, 931 S.W.2d at 270 ("But Article 38.23 already contains one express exception, see Subsection (b) thereof, and according to the rules of statutory construction, where a statute contains an express exception, its terms must apply in all cases not excepted."); *id.* ("This construction is based on the express language of Article 38.23, not on blind obedience to United States Supreme Court decisions.").

Based on these precedents, we decline to recognize an exception to Article 38.23 based on an officer's good-faith reliance upon something other than a warrant because such an exception is inconsistent with the plain language of the Texas exclusionary statute. Other Texas courts have reached the same conclusion. *E.g., State v. Molden*, No. 03–14–166–CR, 484 S.W.3d 602, 609-10, 2016 WL 690795, at *4 (Tex. App.–Austin Feb. 17, 2016, pet. filed); *State v. Munoz*, 474 S.W.3d 8, 16 (Tex. App.–El Paso 2015, pet. ref'd); *Tercero v. State*, 467 S.W.3d 1, 10 (Tex.App.–Houston [1st Dist.] 2015, pet. ref'd) (declining to

expand Article 38.23's good faith exception to include situations where officer had good-faith belief the law justified his actions because such expansion was "inconsistent with the text of article 38.23"); *Carter v. State*, 463 S.W.3d 218, 226 (Tex. App.–Amarillo 2015, no pet.); *Burks v. State*, 454 S.W.3d 705, 709 (Tex.App.–Fort Worth 2015, pet. ref'd) ("[T]here is no exception to our statutory exclusionary rule for an officer's good faith reliance on a statute.... Because there was no warrant in this case, the statutory exception in article 38.23(b) does not apply."); *State v. Anderson*, 445 S.W.3d 895, 912 (Tex.App.–Beaumont 2014, no pet.); *Weems v. State*, 434 S.W.3d 655, 666 (Tex.App.–San Antonio 2014, pet. granted) (noting there is no such good-faith exception found in the Texas exclusionary rule).

The trial court also erred in relying on the federal good-faith exception for a second reason: at the time of the trial court's ruling, this Court had already decided that good-faith reliance on the mandatory blood-draw statute was insufficient to dispense with the warrant requirement. The trial court acknowledged our 2014 opinion *Douds v. State*, which held that the Texas exclusionary rule does not incorporate the federal good-faith exception. 434 S.W.3d at 861–62. Because no warrant was issued, we concluded the good-faith exception did not apply. *Id.* at 862. The trial court felt it was not bound to follow *Douds*, which the court characterized as not yet a "final decision." At the time the trial court issued its order, this Court had recently issued its *en banc* opinion in *Douds* on reconsideration, but the Court of Criminal Appeals had not yet ruled on the State's pending petition for discretionary review.[8] The trial court concluded that it

---

8. We issued the *en banc* opinion on June 5, 2014. The Court of Criminal Appeals did not grant the State's petition for discretionary re-

view until September 17, 2014, two months after the trial court issued its order.

would only be obligated to follow *Douds* once the Court of Criminal Appeals reviewed our opinion, thereby making it a "final decision."

 We disagree. Under the principle of vertical stare decisis, no district court has a right to decide cases contrary to an opinion of the appellate court for its jurisdiction on the same question. *See State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex.Crim.App.1994) (holding trial judges do not enjoy the freedom to ignore clear, binding precedent from a court of superior jurisdiction); *Mason v. State*, 416 S.W.3d 720, 728 n. 10 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd). Trial courts "must follow and be bound by a ruling of law made by a Court of Appeals until such ruling is overruled or set aside" by the Court of Criminal Appeals. *Hurt v. Oak Downs, Inc.*, 85 S.W.2d 294, 300 (Tex.Civ.App.–Dallas 1935, writ dism'd w.o.j.) (Bond, J., dissenting). The pendency of the State's petition for discretionary review did not authorize the trial court to disregard an opinion of this Court. Although the Court of Criminal Appeals later reversed our decision in *Douds*,[9] our decision was the law at the time the trial court made its decision, and the trial court was bound to follow it at that time. For this reason, as well as the others discussed above, the trial court erred in denying appellant's motion to suppress based on the federal good-faith exception to the exclusionary rule.

 Even if article 38.23(b) incorporated the federal good-faith exception, it would not prevent suppression of the blood draw in this case. The stipulation shows that Officer Baldwin collected appellant's blood without a warrant because section 724.012 of the Texas Transportation Code mandated a blood draw given appellant's prior convictions for DWI. The trial court concluded its order by finding that Officer Baldwin had no alternative but to conduct a mandatory blood draw in compliance with this section, and observing that no court had held the section unconstitutional. Therefore, the court reasoned, the blood evidence was not illegally obtained and the exclusionary statute did not apply.

This reasoning overlooks that section 724.012 did not require Officer Baldwin to obtain a blood draw without first securing a warrant. "It is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory nature of the blood draw statute, that violate the Fourth Amendment." *Douds*, 434 S.W.3d at 860 n. 24; *see also Gore v. State*, 451 S.W.3d 182, 188–89 (Tex.App.–Houston [1st Dist.] 2014, pet. ref'd). Because the statute did not require a blood draw without a warrant, Officer Baldwin could not have relied in good faith on the statute to conclude that no warrant was required.

\* \* \*

For these reasons, the State did not carry its burden to prove an exception to the warrant requirement. The warrantless seizure of appellant's blood specimen for alcohol testing therefore violated the Fourth Amendment, and the trial court erred in denying appellant's motion to suppress the specimen and the results of blood alcohol testing on it. *See Perez*, 464 S.W.3d at 47.

## III. The trial court's error was harmful.

 Because the trial court's error violated appellant's rights under the Fourth

---

**9.** The Court of Criminal Appeals held that the defendant failed to preserve a challenge to the constitutionality of the mandatory blood draw on the ground that it was conducted without a warrant. 472 S.W.3d at 676–77. The court therefore did not address the availability of a good-faith exception to the warrant requirement.

Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Weems*, 434 S.W.3d at 667. In the State's case-in-chief, registered nurse Terri Kelsey testified that she drew appellant's blood under the direction of Officer Baldwin. Paul Van Dorn, director of the Brazoria County Sheriff's Office Crime Laboratory, testified that he tested appellant's blood and determined the blood alcohol content was 0.142 grams per 100 milliliters of blood, which is he explained to the jury was almost double the 0.08 legal limit. Van Dorn concluded that a blood test result at the time appellant was stopped would not have differed much from this result because appellant's blood was drawn only an hour after the traffic stop. The State emphasized in closing argument at both the guilt-innocence phase and the punishment phase that appellant's blood alcohol content was almost twice the legal limit.

Given this testimony and argument as well as the definition of "intoxicated" included in the jury charge, which (as discussed above) specifically referenced an alcohol concentration of .08 or more, we cannot determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. We therefore sustain appellant's second issue.

### CONCLUSION

We reverse the judgment of the trial court and remand the case for a new trial consistent with this opinion.