

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0037-22

### BERNARD DANIEL, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRD COURT OF APPEALS BELL COUNTY

**WALKER, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

In 2022, this Court decided what constitutes a violation of the "Driving on Roadway Laned for Traffic" statute, Transportation Code § 545.060(a). *State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022). We held the statute described a single offense, and a violation of the statute occurs when a driver does not drive as nearly as practical entirely within a single lane and moves from that lane in an unsafe manner. *Id.* at 876.

But this Court was not the first to address the question. In 1998, the Third Court of Appeals in Austin reached that very same conclusion in *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex.

App.—Austin 1998, pet. ref'd). The Third Court of Appeals has consistently followed *Hernandez* ever since. In this case—before we handed down our decision in *Hardin*—the court of appeals relied on its prior precedent in *Hernandez* and found the stop, which occurred in Bell County, was not supported by reasonable suspicion because the officer conducting the stop did not have specific articulable facts showing that Appellant's movement was unsafe. *Daniel v. State*, 641 S.W.3d 486, 494 (Tex. App.—Austin 2021).

This Court, however, decides that despite *Hernandez* being longstanding precedent in the Third Court of Appeals district, the Bell County officer in this case could have had an objectively reasonable mistake of law about what the statute requires, because other courts of appeals did not require a showing that the movement was unsafe and because this Court handed down a fractured opinion in 2012 in *Leming v. State*, 493 S.W.3d 552 (Tex. Crim. App. 2016).

I cannot agree. A published opinion of the Third Court of Appeals is binding precedent in Bell County unless or until that court *en banc* decides to overrule its prior decision, or unless or until this Court says otherwise. Neither occurred before our opinion in *Hardin* was handed down. At the time Appellant was stopped, *Hernandez* was the controlling law in Bell County, and an officer conducting a stop could not have an objectively reasonable mistake of law about what the statute requires—the law was settled in the third appellate district. The court of appeals did not err in adhering to its precedent. I disagree with the Court's decision to reverse, and, respectfully, I must dissent.

## I — *Heien* Applies When the Officer Must Construe the Law Himself

In *Heien v. North Carolina*, the Unites States Supreme Court held that if an officer initiates a traffic stop based on a "reasonable mistake of law" as to whether the defendant's conduct violated

a traffic statute, the stop is "lawful under the Fourth Amendment." 574 U.S. 54, 57 (2014). The "reasonable mistake of law" doctrine applies only to "reasonable mistakes," and those mistakes must be "objectively reasonable." *Id.* at 66. Thus, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id.* at 67.

For example, the officer in *Heien* stopped the defendant's vehicle because one of its two brakes lights was out, but the court of appeals later determined that a single working brake light was all the North Carolina law required. *Id.* at 57. The United States Supreme Court nevertheless upheld the stop because at the time the officer made the stop, the statute, which could have been read to require two working brake lights, had "never been previously construed" by North Carolina's appellate courts. *Id.* at 68. As a result, it was objectively reasonable for the officer to think that a single faulty brake light violated the law. *Id.* And because the mistake of law was reasonable, there was reasonable suspicion to justify the stop. *Id.*

Justice Kagan added in her concurring opinion that for the "reasonable mistake of law" doctrine to apply, "the statute must pose a 'really difficult' or 'very hard question of statutory interpretation,'" and such cases are "exceedingly rare." *Id.* at 70 (Kagan, J., concurring). "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." *Id.*

### II — The Relevant Court of Appeals Already Construed the Statute

In its opinion in this case, the Court correctly recognizes that "[w]hat matters to our analysis is whether it was objectively reasonable for an officer in the Third Court of Appeals' jurisdiction to think that Appellant's failure to maintain a single lane of traffic was a violation of Texas law."[1]

---

[1] Majority op. at 11–12.

Answering the question in the affirmative, the Court in its conclusion declares that:

> In April of 2017, there was no controlling interpretation of Section 545.060(a) from the Court of Criminal Appeals and the intermediate courts were split. A controlling interpretation did not arrive until the opinion in *Hardin* issued on November 2, 2022. Therefore, the officer's mistaken interpretation of Section 545.060(a) was "entirely reasonable in view of the nuanced statutory language and the conflicting caselaw from this Court and the intermediate courts of appeals interpreting it."[2]

But the Court's position depends upon a belief that, because other courts of appeals held differently and because this Court handed down fractured opinions in *Leming*, *Hernandez* was no longer precedent in the Third Court of Appeals district. I disagree.

When a court of appeals decides a case, that decision is binding upon the district courts within the court of appeals's jurisdiction. "Trial courts 'must follow and be bound by a ruling of law made by a Court of Appeals until such ruling is overruled or set aside' by the Court of Criminal Appeals." *Perez v. State*, 495 S.W.3d 374, 392 (Tex. App.—Houston [14th Dist.]. 2016, no pet.) (quoting *Hurt v. Oak Downs, Inc.*, 85 S.W.2d 294, 300 (Tex. App.—Dallas 1935, writ dism'd w.o.j.) (Bond, J., dissenting)). Accordingly, we have held that mandamus is available "to correct [a trial court's] judicial action that ignores clear, binding precedent from a court of superior jurisdiction." *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994). "Trial judges do not enjoy the freedom to ignore the law." *Id.* The district court in Bell County that heard Appellant's motion to suppress was bound by the Third Court of Appeals's decision in *Hernandez*.

And not only was the district court in Bell County bound by *Hernandez*, so, too, was the Third Court of Appeals. A court of appeals is "bound by prior opinions of [that] court *unless* there is a contrary decision by [that] court en banc or a higher court." *Nowzaradan v. Ryans*, 347 S.W.3d

---

[2] *Id.* at 12 (quoting *Hardin*, 664 S.W.3d at 879 (Slaughter, J., concurring)).

734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (emphasis in original); *see also Thomas v. Torrez*, 362 S.W.3d 669, 679 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) ("Though the high court has not yet addressed this fact pattern, this court did so . . . a precedent by which we are bound."); *Grimes Cty. Bail Bond Bd. v. Ellen*, 267 S.W.3d 310, 315 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("Our prior opinions have continuing authority, even when a party contends that a precedent was incorrectly decided.").

Additionally, the fact that some of the other courts of appeals reached a different interpretation of the statute did not mean the Third Court of Appeals's precedent in *Hernandez* was no longer binding. "It is rudimentary that courts are not bound by the decisions of other courts of equal jurisdiction." *Shook v. State*, 244 S.W.2d 220, 221 (Tex. Crim. App. 1951) (op. on mot. for reh'g); *Cannon v. State*, 691 S.W.2d 664, 679–80 (Tex. Crim. App. 1985) (quoting *Shook*).[3]

Furthermore, I disagree that *Leming* unsettled the state of the law because the part of *Leming* at issue had no effect on *Hernandez*. In that part—Part II of the lead opinion—four judges agreed

---

[3] *Giesberg v. State*, 945 S.W.2d 120, 130 (Tex. App.—Houston [1st Dist.] 1996), *aff'd by* 984 S.W.2d 245, 251 (Tex. Crim. App. 1998) ("we acknowledge, of course, that we are not bound by [a decision of the Fourteenth Court.]"); *Hines v. State*, 144 S.W.3d 90, 97 (Tex. App.—Fort Worth 2004, no pet.) ("At the outset, we respectfully acknowledge that as a court of equal jurisdiction to that of the Texarkana court, we are not bound by [that court's decision]."); *Eubanks v. Mullin*, 909 S.W.2d 574, 576 n.1 (Tex. App.—Fort Worth 1995, no pet.) ("Appellant is correct that opinions of a sister appellate court do not set precedent that bind other courts of appeals."); *Delamora v. State*, 128 S.W.3d 344, 359 (Tex. App.—Austin 2004, pet. ref'd) ("We are, of course, not bound by the decision of another court of appeals."); *Hardy v. Matter*, 350 S.W.3d 329, 333 (Tex. App.—San Antonio 2011, pet. dism'd) ("The opinions of other Texas appellate courts, however, are not binding on us."); *White v. State*, 999 S.W.2d 895, 902 n.3 (Tex. App.—Amarillo 1999, pet. ref'd) (a decision "rendered by the Court of Appeals for the Second District in Fort Worth . . . is neither our precedent nor binding upon us. Indeed, the question is an issue of first impression in this court."); *Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. App.—Beaumont 1996, no pet.) ("The opinions of a sister court of appeals are not precedent that bind other courts of appeals[.]").

that § 545.060(a) created two separate offenses, and it would be a violation of the law if a driver did not drive as nearly as practical entirely within a single lane, and it would be a violation of the law if a driver moved from the lane unless that movement could be made safely. *Leming*, 493 S.W.3d at 556–61 (opinion by Yeary, J., joined by Keller, P.J, and Meyers and Richardson, JJ.). Four judges dissented, and they agreed that § 545.060(a) created a single offense. *Id.* at 567–70 (Keasler, J., dissenting, joined by Johnson and Hervey, JJ.); *id.* at 573 (Newell, J., dissenting) ("I join Judge Keasler's dissenting opinion[.]"). Judge Alcala joined neither side, leaving four against four. As this Court noted in *Hardin*, four against four makes a tie, not even a plurality. *Hardin*, 664 S.W.3d at 876 n.35. The most that can be said about Part II of *Leming* is that it showed there was a split among the judges of this Court about how to interpret the statute, leaving "point[s] of reference for further discussion of the issue." *Texas v. Brown*, 460 U.S. 730, 737 (1983) (plurality op.).

Beyond showing a disagreement, I would submit that Part II of *Leming* is dicta. Judge Alcala joined Parts I, III, and IV of *Leming*. A five-member majority of the Court upheld the stop because the officer had a reasonable suspicion to believe that Mr. Leming was driving while intoxicated. *Id.* at 561–65. Regardless of our split about the statute's interpretation, "the opinion of the Court" that actually meant something to the decision of the case said it was a DWI case. *See id.* at 553 ("Yeary, J., . . . delivered the opinion of the Court with respect to Parts I, III, and IV[.]"); *contra id.* ("Yeary, J., . . . delivered . . . an opinion with respect to Part II[.]").

Nothing we said in *Leming* upset the holding of *Hernandez*. For the counties covered by the Third Court of Appeals, including Bell County, *Hernandez* remained binding precedent. In Bell County, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Heien*, 574 U.S. at 67.

### III — Overlapping Jurisdictions

In its brief, the State sets aside *Hernandez* and would have us focus on the bigger, statewide picture. The State argues that reasonable mistake of law under *Heien* should apply regardless of whether a court of appeals has construed the statute because of the structure of the appellate courts in Texas. The State points out that there are courts of appeals that have overlapping jurisdictions, and different courts of appeals can make different, conflicting rulings about the law. The State argues that any court of appeals precedent cannot preclude a reasonable mistake of law under *Heien*, because the law at the intermediate appellate court level is "more mixed up than a stray dog's breakfast."

If the breakfast were a sampler from across the state, or even from this Court, there would be two different flavors on the plate. But the breakfast in this case was served up in the Third Court of Appeals's district, where they have been serving the same meal since 1998 and there was nothing to mix up. Within the boundaries of the Third Court of Appeals's district, the law was settled by *Hernandez*.

The State also argues that, if court of appeals decisions can create precedent dictating what a statute means within each court of appeals district, then officers would have to consider what the law is within the district that they are in before they make a stop. But following the law, as it is decided by the court of appeals, is part of the job. An officer enforcing the traffic laws in his county does not need to survey the decisions of all of the courts of appeals across the state. The officer is bound by the law that applies in his county, and the law there depends on what the court of appeals overseeing his county had to say. For officers in the vast majority of counties, they did not have to construe the statute on their own: their courts of appeals had already ruled, one way or the other, on

the question.

But one court of appeals had not answered the question in a published opinion before we decided *Hardin*: the Fifth Court of Appeals in Dallas.[4] Officers in five out of the six counties overseen by the Fifth Court were in the situation in which they did not have any binding precedent in a published decision about what the statute requires, leaving it up to themselves to interpret the law. The officers in Collin, Dallas, Grayson, Kaufman, and Rockwall Counties could have harbored an objectively reasonable mistake of law that they only needed a showing that the driver failed to maintain a single marked lane, regardless of whether the movement was safe.

The sixth county, Hunt County, presents a special case. Hunt County is also within the district of the Sixth Court of Appeals in Texarkana. That court of appeals held that a stop for failing to maintain a single marked lane must be supported by a showing that the failure to do so was unsafe. *Curtis v. State*, 209 S.W.3d 688, 693–94 (Tex. App.—Texarkana 2006), *rev'd on other grounds*, 238 S.W.3d 376 (Tex. Crim. App. 2007). Officers in Hunt County had an authoritative

---

[4] In several *unpublished* opinions, the Fifth Court had expressed the viewpoint that § 545.060(a) would be violated only if the driver failed to maintain a single lane, unsafely. *See Shaw v. State*, No. 05-1-01154-CR, 2012 WL 6014759, at *2 (Tex. App.—Dallas Dec. 4, 2012, no pet.) (mem. op., not designated for publication) (finding reasonable suspicion to stop driver, where officer observed driver having obvious difficulty staying in a single lane of traffic and doing so while there was at least one other vehicle on the road, and finding such driving undeniably unsafe, regardless of whether officer noted it in his report).

*See also Stegal v. State*, No. 05-16-00098-CR, 2017 WL 1536516, at *3 (Tex. App.—Dallas Apr. 26, 2017, no pet.) (mem. op., not designated for publication) (upholding stop on other grounds, but noting that "To support reasonable suspicion of a violation of section 545.060, there must be some indication in the record that failure to maintain a single lane was unsafe."); *Nava v. State*, No. 05-14-00242-CR, 2015 WL 3936819, at *3 (Tex. App.—Dallas June 26, 2015, pet. ref'd) (mem. op., not designated for publication) (also upholding stop on other grounds, but stating "Furthermore, unlike a violation of section 545.060, a violation of section 545.051 does not require an unsafe maneuver.").

decision from the Sixth Court of Appeals telling them what the statute requires, and there was no conflict from the Fifth Court of Appeals.[5]

But there are counties where there was a conflict from above. Gregg, Rusk, Upshur, and Wood Counties are shared between the Sixth Court of Appeals and the Twelfth Court of Appeals in Tyler. Unlike the Sixth Court of Appeals, the Twelfth Court of Appeals held, in unpublished opinions, that the statute is violated when a driver fails to maintain a single marked lane, regardless of whether the movement was unsafe. *Thomas v. State*, No. 12-04-00003-CR, 2005 WL 1798339, at \*3 (Tex. App.—Tyler July 29, 2005, no pet.) (mem. op., not designated for publication); *State v. Virginia South*, No. 12-17-00176-CR, 2018 WL 636085, at \*4 (Tex. App.—Tyler Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication) (holding stop supported by showing that driver failed to remain in her dedicated lane of traffic; however, also noting that the stopping officer believed the driver's behavior was unsafe). While unpublished opinions are not precedent, Tex. R. App. P. 47.7(a), officers in these four counties had, on the one hand, an authoritative decision by the Sixth Court of Appeals and, on the other hand, indications that the Twelfth Court of Appeals would hold differently. Arguably, officers in these four counties would have been in the situation that the State argues applied to officers statewide. While these officers had an authoritative decision from above telling them what the statute requires, there was the looming spectre of a decision that would go in the other direction, depending on where the case would go on appeal. They would have had to gamble on deciding which authority to follow, and those officers could have harbored an objectively reasonable mistake of fact about the law.

---

[5] Especially given that the Fifth Court had indicated that it, too, would hold that a stop would need a showing that the failure to maintain a single marked lane was also unsafe. *See* note 4, *supra*.

The State focuses in particular on the ten counties—Austin, Brazoria, Chambers, Colorado, Fort Bend, Galveston, Grimes, Harris, Waller, and Washington Counties—shared by the First Court of Appeals and the Fourteenth Court of Appeals, both in Houston. Foreshadowing chaos if those two courts of appeals were to reach contradicting decisions, the State contends that reasonable mistakes of law are unavoidable in these counties. That could very well be so, as it would be in the four counties shared by the Sixth Court and the Twelfth Court. But the State ignores the statute at issue. On that matter, the First Court and the Fourteenth Court do not have a conflict. Both courts have held that the statute requires both a showing that the driver failed to maintain a single marked lane and also that the driver's movement was unsafe. *Munoz v. State*, 649 S.W.3d 813, 818 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *State v. Bernard*, 503 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2016), *judgment vacated on other grounds by* 512 S.W.3d 351 (Tex. Crim. App. 2017). Officers in the First and Fourteenth Court of Appeals districts could not have an objectively reasonable mistake of law about what the statute requires.

In sum, the State's concern about overlapping jurisdictions has merit, but only to a point. Overlapping jurisdiction is not a reason to categorically treat decisions of the courts of appeals as non-precedential, leaving officers to construe statutes for themselves until a final decision is handed down from this Court. Overlapping jurisdiction is a concern only where they overlap, and only when those overlapping courts of appeals have a conflict. Outside of those circumstances, then an officer is bound by the law of the land in which he serves. In this case, that land is Bell County in the Third Court of Appeals's district, and that law was *Hernandez*.

### IV — *Heien* Should Not Always Apply Whenever We Have Not Spoken

In trying to escape the precedential effect of court of appeals decisions, the State finally

argues that reasonable mistake of law under *Heien* should always apply whenever *this Court* has not ruled on an issue, no matter what the courts of appeals have held.

While having to be aware of only the decisions of this Court would mean less work for officers, it takes a chainsaw to the court structure of this state. Whenever the issue is whether a stop is justified for violating a statute that we have yet to construe, the State's position would have district courts ignore any decisions by the courts of appeals when deciding a motion to suppress, and it would have courts of appeals ignore their own precedents in reviewing district court rulings on motions to suppress. Instead, so long as the State can point to any ambiguity in the statute, then the stop is to be upheld. And whose definition of ambiguity would apply? If the courts of appeals cannot weigh in, then would ambiguity be measured by how an officer untrained in the law would read the statute? I think not.

Furthermore, it does not seem like the State's proposed solution would actually make life easier for officers. It is not guaranteed that this Court will construe every new statute as soon as an officer believes he sees a violation of that statute and makes a stop. We are a court of discretionary review, and we grant review of only a fraction of the hundreds and thousands of petitions that we receive. Unless and until we exercise our power of discretionary review, the decisions of the courts of appeals are binding upon them and the counties they oversee. But the State's position—that only a decision from this Court would do away with reasonable mistakes of law under *Heien*—would classify every court of appeals decision to be non-precedential whenever a court of appeals construes a criminal statute. Officers would have to be lawyer-on-the-spot for any statutes that we have not yet construed, even if the learned justices of the courts of appeals have already addressed the statutes.

Taken to its extreme, if the question was not the construction of a Texas statute, but instead the reasonableness of a search or seizure under the Fourth Amendment, the State's position would seem to have *Heien* apply even when this Court has spoken. The final arbiter of questions of federal law, including the interpretation of the United States Constitution, is the United States Supreme Court. Could a stop in Texas be supported by an officer's mistake of law, simply because another state issued a ruling upholding a stop sharing similar facts, regardless of a contrary holding by this Court, so long as the United States Supreme Court has not handed down a final, authoritative decision? Again, I think not.

The State asks for too much.

### IV — Conclusion

Before this Court handed down *Hardin*, a stop in some other county, overseen by a court of appeals that had not yet decided the question in a precedential published opinion,[6] or overseen by multiple courts of appeals that have decided the question in different ways,[7] might have been supported by an officer's objectively reasonable mistake of law about whether the statute required a showing that the driver's operation of his vehicle was unsafe. In those counties, there would be no authoritative decision informing the officer what constitutes a violation of the statute. The officer therefore would have been on his own to interpret the law. If he mistakenly understood the statute to require no more than a failure to drive within a single lane, that understanding would have been objectively reasonable although ultimately wrong. *See Heien*, 574 U.S. at 68; *see also Heien*, 574 U.S. at 70 (Kagan, J., concurring).

---

[6] The Fifth Court of Appeals.

[7] Gregg, Rusk, Upshur, and Wood Counties.

But that is not this case. This case came out of Bell County. For Bell County, the issue has been settled law ever since the Third Court of Appeals decided *Hernandez* in 1998. Officers enforcing the law there have known for twenty-five years that a stop for failing to maintain a single marked lane requires a showing that the vehicle's movement was also unsafe. An officer making a stop in Bell County might mistakenly believe he can stop a driver without a showing that the movement was unsafe, but that mistaken belief would not be reasonable.

The judgment of the court of appeals should be affirmed. Because the Court goes in the other direction, I respectfully dissent.

Filed: February 14, 2024
Publish